## El Pueblo *v.* Bird.

Apelación procedente de la Corte de Distrito de San Juan.

No. 52.—Resuelto en febrero 27, 1904.

Casación.—En el escrito interponiendo recurso de casación, deberán citarse con precisión y claridad el artículo de la ley que lo autorice y las leyes que se supongan infringidas.

Calumnias e Injurias a la Autoridad.—Cuando las expresiones contenidas en un artículo publicado en un periódico tiendan a calumniar, injuriar e insultar a los jueces de un tribunal, se comete el delito de calumnia e injurias a la autoridad, previsto en el artículo 265 del antiguo Código Penal.

Responsabilidad Criminal.—La circunstancia de que los hechos cometidos por el acusado envuelvan la comisión de otro delito castigado con una pena menor, no es motivo para que se le absuelva del delito imputádole.

Juicio por Jurado—Felony y Misdemeanor—Libelo.—El juicio por jurado sólo puede concederse en casos de *felony* y sus beneficios no se han hecho extensivos a causas por libelos o por cualquier otro *misdemeanor*.

Id.—Si el juicio por jurado no se solicitare en tiempo oportuno, se entenderá que el acusado renuncia a él.

Apelación—Sentencia—Errores o Defectos de Carácter Técnico.—Al dictar sentencia el tribunal no debe prestar consideración alguna a errores (*) o defectos de carácter técnico, que no afecten los derechos substanciales del acusado.

Casación por Quebrantamiento de Forma.—Los errores de procedimiento que pueden dar lugar al recurso de casación por quebrantamiento de forma, son errores de carácter substancial y dicho recurso sólo procede en los casos enumerados en los artículos 911 y 912 de la antigua Ley de Enjuiciamiento Criminal.

Circunstancias Agravantes.—Constituye circunstancia agravante, según el antiguo Código Penal, la realización del delito por medio de la imprenta.

Apelación—Errores de Procedimiento—Excepciones.—Los errores de procedimiento que no hubieren sido objeto de excepción en su oportunidad, no pueden ser discutidos en la apelación.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Juan de Guzmán Benítez.*

Abogado del apelado: *Sr. del Toro, Fiscal.*

El Juez Asociado Sr. MacLeary emitió la opinión del tribunal.

En el día 13 de febrero de 1902, en el *San Juan News,* un periódico que se publica en la capital de Puerto Rico,

y del cual Hobart S. Bird está designado en el mismo como editor y director, apareció el siguiente editorial principal:

## "EL INCIDENTE DE PALMER.

"En esta edición publicamos una carta abierta de Don Santiago Palmer, distinguido y respetado notario y abogado, en la que demuestra la vil y cobarde manera con que el Tribunal de Distrito de San Juan quiso utilizar sus facultades públicas para manchar el honor y la reputación de un ciudadano de· carácter tan íntrego y elevado como el de Santiago Palmer.

"Para los Puertorriqueños, la reputación del hombre que fué tan injustamente atacado y la del presidente del tribunal del distrito, Ramos, el principal promotor e inspirador de todas las iniquidades tramadas y puestas en práctica por aquel tribunal, son bien conocidas, pero los americanos y extranjeros no pueden tan fácilmente distinguir lo bueno y lo malo entre la muchedumbre puertorriqueña.

"Por esta razón es que se hace necesario, como dice acertadamente el Sr. Palmer, que se practique una investigación acerca de la ignominiosa conducta del tribunal de distrito, al dictar contra (*) aquél sentencia condenatoria por el delito de imprudencia temeraria, y cuya sentencia ha sido revocada por el Tribunal Supremo.

"Tenemos jueces en los tribunales, tan repletos de animosidad política, tan ciegos y de instintos tan perversos para aniquilar a los de contrarias opiniones, y estimular a sus correligionarios, que ningún sacrificio de la justicia, de la ley o del derecho, es suficientemente grande para detenerles en la ejecución de sus nefandos propósitos.

"Pónganse ustedes a recapacitar, honrados lectores, acerca de los fines con que estos irredimidos tunantes se habían puesto en connivencia. Ellos, funcionarios republicanos, que ocupan altos. puestos de confianza, que no solamente son corruptos en su vida pública, sino inmorales e indecentes en su vida privada, se atreven acusar como delincuente y sentenciar a un ciudadano que está muy por encima ·de ellos, toda vez que su conducta queda libre de todo reproche.

"Véase el motivo por qué su buen nombre fué echado a correr. Resulta que dicho caballero en sus funciones de notario, certificó que cierto documento había sido firmado en su presencia, lo cual fué cierto. Más tarde se vino en conocimiento de que los nombres de las personas que aparecían firmando el documento eran· supuestos, pues aquéllas no dieron al notario su verdadero nombre. Con un

pretexto tan trivial como éste, se procesó al notario, el tribunal le juzgó por 'imprudencia temeraria' y por ello le sentenció a cumplir condena en la cárcel.

"Valiéndose de esta acusación inmotivada, y como en son de guerra, los mismos republicanos que no podrían igualarse al acusado, se aproximan a. la Mansión Ejecutiva y deploran ante el Gobernador y otros oficiales que existieran tales escándalos.

"Por supuesto, que establecida la apelación, fué sobreseída la causa y el Sr. Palmer declarado inocente. Así, pues, la única manera de que estos sucesos ignominiosos no puedan repetirse, es la de renovar completamente el sistema judicial, separando de sus puestos a hombres como Ramos y Rossy, en particular."

Competentes funcionarios procedieron inmediatamente a la demanda del editor y director de dicho periódico, por motivo de la citada publicación, bajo el Código Penal Español, entonces vigente, designando la ofensa "injurias y calumnias."

Después de la investigación usual ante el juez municipal, (*) el Fiscal de la corte de distrito, en 8 de marzo de 1902, presentó una acusación formal contra el demandado, que en el Código se llama, "acusación provisional."

La Corte de Distrito de San Juan, contra la cual fué dirigido dicho artículo editorial, se componía, en el tiempo de la citada publicación, del Hon. Juan R. Ramos, Hon. Juan Morera y Martínez y Hon. José R. F. Savage. Después, el Juez Savage renunció, y los Jueces Ramos y Morera declinaron conocer de la causa, alegando que tenían cierto interés en el resultado de la misma. El Hon. Henry F. Hord fué nombrado para sustituir al Juez Savage, y tomó posesión del destino en mayo de 1902, encargándose de dicha causa. El Juez Ramos renunció después, y el Hon. Juan J. Perea fué nombrado para sustituirlo. El Hon. Juan Hernández López fué nombrado juez especial para desempeñar el cargo del Juez Morera, quien se consideró inhabilitado.

La vista tuvo lugar en el día 18 de septiembre de 1902, y después de debida consideración, la corte sentenció al acu-

sado como autor del delito de injurias a la autoridad realizado por medio de la imprenta, a la pena de cuatro meses y
un día de arresto mayor, para ser extinguida en la cárcel
pública de la ciudad de San Juan, suspensión de todo cargo
y derecho del sufragio durante el tiempo de la condena y al
pago de las costas.

Contra esta sentencia el demandado interpuso recurso de
casación para ante la Corte Suprema de Puerto Rico, y en el
día 15 de junio de 1903, después de mucha discusión por
parte de los abogados, pro y contra, esta corte dictó sentencia revocando la del tribunal de distrito, reenviando la
causa al mismo para nuevo juicio. La decisión de la Corte
Suprema fué fundada en las irregularidades del procedimiento, sosteniendo, tres de los jueces, que el hecho de no
haber notificado al demandado el nombramiento del juez
especial, Sr. Hernández López, era una infracción de ley de
suficiente gravedad para hacer nula la sentencia, y sosteniendo (*) dos de ellos que el juez especial Sr. Hernández
López, no había sido propiamente nombrado, por no haberse
hecho el nombramiento por el Gobernador y confirmado por
el Consejo Ejecutivo, y que por ese motivo la sentencia era
irregular, debiendo revocarse la misma, pero estando todos de
acuerdo en reenviar el caso a la corte de distrito, para nuevo
juicio, de acuerdo con la ley.

Cuando se celebró el nuevo juicio en la corte de distrito,
dicho cuerpo se componía del Hon. Juan Morera Martínez,
el Hon. Frank H. Richmond y el Hon. José Tous Soto. Recusándose otra vez el Juez Morera, el Sr. Angel García y
Veve, juez especial de distrito debidamente constituído en
virtud de su nombramiento por el Gobernador como tal, ocupó
dicho sitio para el juicio de la causa.

Por providencia del día primero de octubre de 1903, se
ordenó que el demandado fuera citado para que compareciera ante la corte a contestar la acusación presentada contra él y para señalar día para la vista. En esta providencia

se expuso que desde el primero de julio de 1902 había estado
vigente una nueva Ley de Enjuiciamiento Criminal, pero
aparece que ninguna tramitación se ha hecho de acuerdo con
aquella ley, excepto la acusación, la alegación de inculpabili-
dad y el haberse señalado día para la vista, que son sustan-
cialmente los mismos procedimientos empleados, de acuerdo
con la Ley de Enjuiciamiento Criminal anterior y Orden Gene-
ral No. 228 de 23 de diciembre de 1899.

La providencia referida, con la omisión de las palabras
preliminares y las firmas, a la letra dice así:

"*Resultando:* que el Tribunal Supremo anuló la sentencia decre-
tada en esta causa y·todo lo actuado desde la acusación Fiscal y
ordenó que se celebrara nuevo juicio con arreglo a la ley.

"*Resultando:* que hoy está vigente desde el 1 de julio de 1902, y
después de la instrucción de esta causa, una nueva ley procesal.

"*Cítese* al acusado, Hobart S. Bird, para que comparezca ante el
tribunal el día 12 del corriente a las 9 de la mañana y oiga la (*)
acusación fiscal (antes conclusiones provisionales) y conteste dicha
acusación con arreglo al Código de Enjuiciamiento Criminal vigente
y para señalar día para el juicio."

De consiguiente el demandado compareció, le fué leída la
acusación, rehusó que se le nombrara abogado y alegó su incul-
pabilidad y se señaló el día 20 del citado octubre, o sea ocho
días después para el juicio.

En el día 19 del propio octubre, el Sr. Don Juan de Guz-
mán Benítez compareció como abogado defensor del deman-
dado Bird y presentó una alegación en su favor en forma
de moción, reclamando juicio por jurado y exponiendo ra-
zones por las cuales el demandado no había pedido el jurado,
según los requisitos del estatuto en el mismo día o antes de
leérsele la acusación. En el día 20 de octubre la corte tomó
en consideración este alegato del demandado y todos los esta-
tutos a que se refiere, y el mismo se desestimó en todas sus
partes. Entonces el demandado presentó una moción pi-
diendo que se anulase la acusación, que a su vez fué deses-

timada por la corte y se procedió a la celebración del juicio,
ofreciendo el Fiscal evidencia para probar la acusación.    El
demandado no ofreció prueba alguna en favor suyo y la corte
procedió de acuerdo con el antiguo Código a la votación en
la causa, declarando al demandado culpable de acuerdo con
la acusación, sentenciándolo a dos meses y un día de arresto
mayor, según pidió el Fiscal, y al pago de todas las costas.

Como esta pena es menor que la impuesta por la corte en
el primer juicio, es de observarse que en el primer juicio,
en la corte de distrito, el demandado fué convicto y senten-
ciado a cuatro meses y un día de arresto mayor, compa-
reciendo el acusado privado y pidiendo a la corte que se
aumentara el castigo pedido por el Fiscal en su acusación
provisional.    En el segundo juicio no compareció el acusador
privado, y el juicio fué celebrado y concluído de acuerdo
solamente con la acusación provisional del Fiscal, que sola-
mente (*) pidió la pena de dos meses y un día.    El aumento
se hizo en el primer juicio por circunstancias agravantes que
no aparecen haber sido alegadas en el segundo juicio.    La
pena parece haber sido bien leve y tan moderada como podría
esperar un hombre culpable.    No se alega ninguna exage-
ración con respecto a la misma.

Contra esta sentencia de la corte de distrito, el deman-
dado Bird interpuso en debida forma recurso de apelación
por quebrantamiento de forma, para ante este tribunal, en
24 de octubre de 1903.    El abogado defensor funda su apela-
ción en el segundo párrafo del artículo 912 del Código de
Enjuiciamiento Criminal Español, alegando que el tribunal
de distrito en su sentencia, no había decidido todos los extre-
mos que se habían alegado en su favor:    Además alegó infrac-
ción de ley, fundándose en el primer párrafo del artículo
848, el primer párrafo del artículo 849, el artículo 850, y el
último párrafo del artículo 853, en relación con el párrafo
8 del artículo 848, respecto a la providencia dictada por la
corte en su primera moción presentada en favor del deman-

dado en el juicio oral, preceptos todos del Código de Enjuiciamiento Criminal.

Dichos artículos admiten recurso contra sentencias firmes cuando el tribunal haya cometido un error en la calificación del delito y mencionan otras materias que no se relacionan con el presente caso y que después fueron abandonadas por el alegato presentado en esta corte. Parece haber sido la costumbre en los asuntos de casación, mencionar todas las secciones de la ley que de manera alguna pudieran relacionarse con el asunto por buena precaución, en vista de la regla contenida en los estatutos que prescribe que si no se especifica el título y la sección del estatuto que hayan sido infringidos, la corte desatendería el error que se alegase. Véase el antiguo Código de Enjuiciamiento Criminal, artículo 874. Parece que se ha seguido esta antigua costumbre al interponer el presente recurso de apelación.(*)

En el intervalo se promovió procedimiento de *habeas corpus,* partiendo del fundamento de que al demandado le fué denegado recurso de apelación, no habiendo sido convicto de *felony* y que fué enviado inmediatamente a la cárcel. En vista de la causa de *habeas corpus* el demandado fué libertado por orden de esta corte, puesto que tenía el derecho de interponer recurso de apelación contra la sentencia dictada por la corte de distrito, en dicho caso, a pesar de que era solamente un *misdemeanor,* en vista de que la nueva ley, que no da lugar a recursos en casos de *misdemeanor,* que fué establecida por la Asamblea Legïslativa de 1 de marzo de 1902, y designado "El Código de Enjuiciamiento Criminal," no era aplicable a actos cometidos con anterioridad a la misma, con perjuicio a cualesquiera de los derechos sustanciales del demandado. Por consiguiente el recurso fué admitido.

En el día 23 de noviembre de 1903, los autos en el caso fueron elevados de la corte de distrito al Tribunal Supremo, y en 30 del mismo mes, el recurrente compareció mediante su abogado el Sr. Juan de Guzmán Benítez. El Pueblo de

Puerto Rico también fué representado por el Ministerio Fiscal. En 14 de diciembre de 1903, el abogado defensor del recurrente presentó un alegato a favor de su representado consignando detenidamente los fundamentos en que basa el recurso de apelación, los que son sustancialmente como sigue:

"1. Que las frases del artículo publicado en el periódico del cual se queja, no constituyen el delito prescrito y castigado en el artículo 265 del antiguo Código Penal, es decir, de calumnia, injuria e insulto a la autoridad pública, a saber: la Corte de Distrito de San Juan, como se alega en la acusación del Fiscal y en la sentencia de la corte.

"2. Que la corte de distrito incurrió en error al negarle al demandado un juicio por jurado en cumplimiento de su demanda hecha por su abogado defensor en 19 de octubre."

Estos son los únicos fundamentos alegados por el demandado y por lo que pide se revoque la sentencia. De lo que (*) contienen los autos no aparece que ningún otro derecho que solicitara el procesado, o que él podría utilizar, le fué denegado, ni con arreglo a la antigua ley de Enjuiciamiento Criminal, ni de acuerdo con la actual.

El artículo 265 del antiguo Código Penal bajo el cual fué procesado, a la letra dice:

"Los que, hallándose un ministro de la Corona o una autoridad en el ejercicio de sus funciones, o con ocasión de éstas, los calumniaren, injuriaren, insultaren de hecho o de palabra, fuera de su presencia o en escrito, que no estuviera a ellos dirigido, serán castigados con la pena de arresto mayor."

Ciertamente se cometió el delito que el estatuto se proponía corregir, y es bien claro que el objeto del artículo injurioso fué arrojar el descrédito sobre la corte, poniéndola en evidencia ante el pueblo sobre cuyos derechos y libertades ella tiene que juzgar, y tendiendo de este modo a debilitar su autoridad. Es difícil entender de qué modo una persona razonable, que no esté interesada, puede leer el artículo edi-

torial del cual se hace queja, sin encontrar que cae bajo las prescripciones de este estatuto. Véase el caso de Miguel Vives Deyá, decidido en 23 de mayo de 1895, y del cual se hace relación en 54 Jurisprudencia Criminal, p. 615. Ciertamente las expresiones contenidas en dicho artículo tienen por objeto calumniar, injuriar e insultar a los jueces de la Corte de Distrito de San Juan, y el hecho de que el citado artículo se refiere a una carta que aparece en el citado periódico de la misma fecha, no disminuye de manera alguna su carácter ofensivo. Los cargos no son tampoco de carácter tan general que puedan considerarse fuera de los términos del estatuto. Es posible que la ofensa imputada al procesado también incluya la falta de respeto y consideración debida a la autoridad, según se consigna en el párrafo 5 del artículo 597 del mismo código, por el cual se prescribe una pena más ligera, pero eso no altera la criminalidad del hecho del cual se acusa al (*) procesado. Bien puede considerarse culpable del delito y de la falta penados por la ley, aunque solamente puede ser convicto del que se le acusa. De la misma manera el delito de asesinato incluye un asalto simple, pero nadie por esa razón puede reclamar el derecho de ser procesado por la menor y exonerado de la ofensa mayor.

En cuanto a habérsele denegado al demandado un juicio por jurado, basta decir que bajo la ley de jurados solamente aquellos *felonies* que se castigan con la pena de muerte o de presidio, pueden ser juzgados por jurado. Nadie tiene el derecho de ser juzgado por jurado cuando solamente se trata de un *misdemeanor* y el mero hecho que la sección 246 del nuevo Código Penal y la 264 del nuevo Código de Enjuiciamiento Criminal, especifican que en todo caso de libelo el jurado determinará la ley y el derecho, no se opone a la ley anterior, ni aun siquiera la contradice, porque ahí solamente se dice que cuando se provee el jurado en un caso de libelo, el mismo tendrá "el derecho de determinar la ley y el derecho." Los beneficios de la ley de jurados no se han ex-

tendido a los casos de libelo, o a ningún otro *misdemeanor*. En el caso de que este delito se calificara como un *felony,* entonces tales causas se podrían juzgar ante jurados. Pero en la actualidad, la circunstancia que bajo el Código Penal los libelos no son *felonies* impide que tenga juicio por jurado un procesado que se acusa de libelo. Es por esta y otras razones, innecesario discutir la cuestión de si *columnia, injuria* e *insulto* son términos en el antiguo código, que corresponden a *libelo* en el código moderno. Pero existe una gran diferencia entre los delitos que sería fácil de demostrar si la cuestión se discutiera.

Además, muy bien se ha dicho en argumento por el Fiscal, que aun si el demandado hubiera tenido derecho al jurado, lo. abandonó y perdió su oportunidad de pedirlo, por no insistir al debido tiempo. Sin embargo, de la vista que (*) tomamos del caso, ni este hecho, ni el argumento que se funda en el mismo, es material.

El deber de esta corte en el juicio de recursos criminales, bajo la ley moderna, está consignado en la sección 362 del nuevo Código de Enjuiciamiento Criminal, que a la letra dice así:

"Sección 362. Después de celebrada la vista de la apelación, la Corte Suprema debe dictar sentencia sin parar mientes en los errores o defectos técnicos o de forma, o en excepciones que no afecten los derechos sustanciales de las partes."

Esta sección es idéntica con la 1258 del Código Penal de California, que ha sido interpretada en numerosos casos por el Tribunal Supremo de dicho Estado. En el caso del *Pueblo* v. *Turley,* 50 Cal., 471, la Corte Suprema de aquel Estado, al interpretar la mencionada sección, emplea las siguientes expresiones:

"A la verdad, después de considerar atentamente el ingenioso argumento presentado a favor del detenido, nos vemos en la impo-

sibilidad de descubrir razón alguna por la cual deberíamos alterar la sentencia dictada en la corte inferior en este caso. Por las disposiciones del Código Penal (sección 1258) estamos obligados a dictar sentencia sin atención a errores o defectos técnicos o excepciones, que no afectan los derechos sustanciales de las partes. Estamos seguros que en el juicio celebrado no se ha denegado ningún derecho sustancial del detenido."

Un error de procedimiento cometido por el tribunal sentenciador no justifica la revocación de la sentencia, a no ser que el mismo perjudique los derechos sustanciales del demandado, e incumbe al acusado probar tal perjuicio. *Pueblo* v. *Murback,* 64 Cal., 370; *Bernert ex parte,* 62 Cal., 528; *Pueblo* v. *Smith,* 59 Cal., 608; *Pueblo* v. *Nelson,* 56 Cal., 82; *Pueblo* v. *Turley,* 50 Cal., 471; *Pueblo* v. *Brotherton,* 47 Cal., 404. (*)

Y además, según la Ley de Enjuiciamiento Criminal Española que estaba vigente, en cuanto a todo hecho cometido con anterioridad al día 1 de julio de 1902, los errores o defectos en el procedimiento podrán dar lugar al recurso de casación por quebrantamiento de forma y dichos errores están taxativamente comprendidos en los artículos 911 y 912 de dicha ley, bastando su simple lectura para comprender que tales errores habían de ser sustanciales, como la denegatoria de diligencias de pruebas o la falta de citación para el juicio, en cuyos casos pueden sintetizarse todos los enumerados en el artículo 911, mereciendo igual calificación de sustanciales los del artículo siguiente, y que el recurso de casación por quebrantamiento de forma sólo procedía en los casos que mencionan los dos artículos citados, lo declaró el Tribunal Supremo de Madrid, entre otras sentencias, en la de Ramón Alvarez Lorenzo, dictada en 22 de marzo de 1895, 54 Jurisprudencia Criminal, 620. Por consiguiente, la jurisprudencia americana y la española están en su esencia conformes.

Por lo tanto, siguiendo el antiguo Código de Enjuiciamiento Criminal, bajo el cual este caso propiamente está considerado, habiéndose cometido la ofensa con anterioridad al

1 de julio de 1902, no se podría considerar nada a favor del recurrente, sino los dos extremos consignados en el alegato presentado por su abogado defensor en esta corte, en 14 de diciembre de 1903 que anteriormente se han consignado en la presente.

El artículo 874 del Código de Enjuiciamiento Criminal Español, en su primer párrafo, a la letra dice así:

"Este recurso se interpondrá en escrito firmado por abogado y procurador autorizado con poder bastante, sin que en ningún caso pueda admitirse la protesta de presentarlo, y en dicho escrito se consignarán en párrafos numerados, con la mayor concisión y claridad, sus fundamentos y se citarán el artículo de la ley que lo autorice y las leyes que se supongan infringidas." (*)

Bajo este artículo es claro que el Tribunal Supremo queda limitado a los fundamentos del recurso que cite el demandado, y éstos se han considerado cuidadosamente en la anterior discusión.

Pero no importa que este caso se considere bajo la antigua ley de procedimiento, o bajo el código actual; el resultado viene a ser el mismo. El demandado no tiene fundamento sostenible sobre el cual pueda basarse la revocación de la sentencia.

Ninguna persona razonable puede leer los autos en el presente caso y tener la menor duda de la culpabilidad del procesado. Hasta ahora toda discusión ha sido solamente en cuanto a las cuestiones de forma. Es verdad que éstas son materias importantes, y todo acusado tiene el derecho de insistir en ellas, como ha hecho el recurrente. Pero será bien observar, con relación al asunto, que el recurrente en el presente caso ha sido juzgado dos veces por la corte de distrito, y sucede que dicha corte, en ambas ocasiones, fué compuesta de tres magistrados distintos. Fué declarado culpable en ambos juicios, y en el primero fué sentenciado a cuatro meses y un día de arresto mayor, y en el segundo fué sentenciado

a dos meses y un día. La primera sentencia fué revocada por el Tribunal Supremo solamente por motivos técnicos, estando de acuerdo los cinco jueces del mismo y el presente caso, en grado de apelación, está otra vez pendiente de la resolución de este tribunal sobre una cuestión semejante. En la presente causa el reo se ha sentenciado, por ser culpable del delito de injurias y calumnias definido en el artículo 265 del Código Penal Español, a la pena de arresto mayor, cuya duración es de un mes y un día a seis meses, según el artículo 27; y como realizó el delito por medio de la imprenta, lo que en el caso de que se trata constituye una circunstancia agravante de responsabilidad criminal, comprendida en el número 6 del artículo 10, es claro que la pena ha debido imponerse al acusado en su grado máximo, con (*) arreglo a la disposición 3ª. del artículo 80, cuyo grado máximo, dentro del prudente arbitrio judicial, es de cuatro meses y un día a seis meses, según la tabla demostrativa del artículo 95. Empero, como el recurso ha sido interpuesto por Bird, el acusado, y no por el Ministerio Fiscal, no cabe agravar la situación de aquél, imponiéndole pena superior a la que ha sido impuesta por la corte sentenciadora, aun si este tribunal se considerara autorizado a aumentar la pena impuesta por dicha corte.

Está bien establecido por la jurisprudencia antes aplicada y por el código nuevo, así como por el antiguo, que el acusado en un caso de *misdemeanor,* como el presente, no puede reclamar una revocación de la sentencia, teniendo como fundamento meramente las irregularidades de las cuales no se quejó en el acto, y a las cuales no se tomó excepción ni se presentó en esta corte. No obstante esto, según la nueva ley que gobierna a este tribunal en casos de apelación, hemos examinado cuidadosamente los autos todos, para determinar si habría alguna cuestión de hecho o de derecho que resultaría ventajosa para el acusado sobre la cual se podría fundar la revocación de la sentencia. Tal pesquisa se ha hecho sin resultado. Los autos no demuestran ninguna instancia en que

algún derecho o privilegio del acusado ha sido violado y no hay procedimiento ninguno de que con razón pueda quejarse.

Aunque el recurso no se funda en el número 1 del artículo 912 de la Ley de Enjuiciamiento Criminal Española, tampoco procedería por tal fundamento, pues de la sentencia se desprende, con bastante claridad y precisión, cuáles son los hechos que el tribunal sentenciador estimó probados, por más que no lo dijo de modo expreso y terminante.

En vista de que no se ha cometido ningún error material en la corte de distrito, con perjuicio del recurrente en el juicio del presente caso, y como la sentencia dictada contra (\*) el mismo es justa y correcta en todo sentido, la misma debe confirmarse con costas, lo que se hará.

*Resuelto de conformidad.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Hernández y Figueras.

El Juez Asociado Sr. Sulzbacher no formó tribunal en la vista de esta causa.