El Pueblo, Demandante y Apelado, v. Rodríguez, Acusado y Apelante.

Apelación procedente de la Corte de Distrito de Guayama en causa por libelo.

No. 1937.—Resuelto en julio 24, 1923.

Libelo—Comunicación Privilegiada—Malicia—Peso de la Prueba—Causa Probable—Buena Fe—Supuestos Delitos.—El acusado, Comisionado Municipal de Educación, fué declarado culpable de un libelo infamatorio que se alega fué publicado en una carta dirigida al Gobernador. La carta refería el relato que había sido hecho al acusado a presencia de algunos testigos por el cuñado del supuesto ofensor y de ser cierto dicho relato envolvía la comisión de un delito grave perpetrado por un miembro de una asamblea municipal. El acusado refería en la carta que la persona que hizo el relato ya había fallecido y expresaba alguna duda en cuanto a la certeza de los pormenores pero recomendaba que el asunto fuera investigado. En el juicio quedó probado que el acusado antes de escribir la carta había recibido otros informes de diferentes fuentes que indicaban que en realidad existía algún fundamento para tal relato y que no había alguna indicación de que el acusado hubiera tenido alguna razón para dudar de la veracidad del cuñado. Se resolvió: que la comunicación dirigida al Jefe Ejecutivo era claramente privilegiada y que los hechos reseñados no son suficientes para establecer malicia aún cuando el acusado voluntariamente no hubiera asumido la obligación de probar la causa probable. Los ciudadanos en particular cuando actúan de buena fe y basados en motivos razonables deben sentirse libres para denunciar ante las debidas autoridades supuestos delitos sin temor a un proceso.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José Soto Rivera.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

El acusado fué declarado culpable por un supuesto libelo infamatorio contenido en una carta dirigida al Gobernador. La carta relataba una información que había sido hecha al acusado, la que, de ser cierta, envolvía la comisión de un delito grave, o una serie de delitos graves, por un miembro de la asamblea municipal. El autor de dicha carta manifestaba que la persona por quien fueron hechas estas manifestaciones había fallecido, y expresaba cierta

duda en cuanto a la veracidad de todos los hechos relata-
dos, pero recomendaba que el asunto debía ser investigado.

La prueba aducida en el juicio revelaba el hecho de que
antes de escribir la carta su autor había recibido otros in-
formes de otras fuentes que indicaban que podría en reali-
dad existir algún fundamento para el relato que había sido
hecho por un cuñado del supuesto ofensor. El denunciante
en este caso manifiesta que las relaciones entre él y su cu-
ñado eran tirantes, pero no hay nada que indique que el
acusado tenía conocimiento de esta o alguna otra circuns-
tancia que le hubiera podido hacer dudar de la veracidad
del cuñado. Este cuñado hizo las manifestaciones referi-
das en la carta, a presencia de un número de testigos, uno
de los cuales declaró en el juicio. También este testigo ha-
bía sido informado con respecto al mismo asunto que llegó
a conocimiento del acusado después de oír la narración he-
cha por el cuñado.

Verdaderamente que los denunciantes en el caso a que
se acaba de hacer mención refirieron los hechos alegados a
varias personas al día siguiente en que se dijo haberse co-
metido el delito. Ellos también llamaron a un abogado de
San Juan, quien hizo un viaje a través de la isla para in-
vestigar el asunto algunos días después de la fecha citada
en último término. Como resultado de esta investigación el
abogado quedó convencido de que se había cometido un de-
lito, pero, debido a la falta de deseo de los testigos en de-
clarar, y a otras circunstancias, no creyó que el caso pu-
diera ser bastante fuerte para sostener una acusación, en
vista de lo cual se desistió del asunto.

El cuñado, como se expresa en la carta dirigida al Go-
bernador, manifestó que se había presentado una denun-
cia al fiscal del distrito, y que el caso estaba "durmiendo el
sueño de los justos" en su oficina. Después de haber sido
referida la carta al fiscal de distrito para una investigación,
volvió el acusado a escribir al Gobernador quejándose de la

forma en que se estaba haciendo la investigación, ocupán-
dose en hacer cierta fuerte crítica del fiscal de distrito y de
otros funcionarios públicos, y proponiendo que el asunto
fuera puesto en manos de algún otro funcionario. Después
que había sido instituído el presente proceso, también envió
el acusado un telegrama a cierto periódico, cuyo objeto era
rectificar un informe anterior que se dice estaba fundado
en datos obtenidos del Departamento de Justicia. La prueba
del gobierno también reveló que nunca se había formulado
en la oficina del fiscal del distrito, en la corte municipal, o
en el cuartel de policía, ninguna denuncia contra el denun-
ciante en este caso.

La comunicación dirigida al Jefe Ejecutivo era clara-
mente privilegiada y las circunstancias arriba reseñadas no
son suficientes para establecer la malicia, aun cuando el acu-
sado no hubiera asumido voluntariamente la obligación de es-
tablecer una causa probable. Véanse los casos de *Franco
Soto* v. *Martínez*, 29 D. P. R. 237, y *Coll* v. *Gandía*, *id.* 999.

El hecho de que una persona, al referir un suceso, se
imagine que una línea de polvo llegue a convertirse en una
escuela rural en receso, que la oficina de un funcionario mu-
nicipal tomase la apariencia de una arboleda vecina y, para
completar la narración, que un profesor desempeñe el pa-
pel de una madre indignada, no es una cosa sorprendente.
No solamente vienen a la imaginación frecuentemente cosas
que son más extrañas, sino que una metamorfosis algo pa-
recida es cosa que está dentro de la experiencia diaria de
cualquier observador cuidadoso de aquellos que están cons-
tantemente oyendo y diciendo algo nuevo. La mera licen-
cia poética no es bastante para convertir en un libelo di-
famatorio una narración así presentada y debida en parte
a la imaginación del informante y repetida de buena fe por
quien la oye, no sólo sin tener ninguna razón para sospe-
char que carezca en absoluto de fundamento sino después

de haber recibido más informes que indican una conclusión contraria.

Puede ser que una acusación en que se imputan los hechos referidos en la carta al Gobernador no sostuviera una sentencia condenatoria del denunciante en este caso, basada en la prueba de los testigos de la defensa; pero aparte de la cuestión de incongruencia, si esa prueba hubiera sido aducida en el juicio de tal denunciante, por el delito que se le imputa y un juez sentenciador o jurado hubiera aceptado tal prueba como cierta, entonces una sentencia o veredicto basado en la misma difícilmente sería modificado.

No incumbía al acusado, por supuesto, el probar que el denunciante era culpable del delito a que hacía referencia el supuesto escrito libeloso, pero quizá debido a la misma culpa del acusado en no conocer su deber en este sentido, el juicio en la corte inferior parece haber procedido más o menos fundado en tal teoría.

Al resolver el caso el juez sentenciador dijo que la única cuestión que había de resolverse era si el proceder del acusado al escribir la carta había estado ''justificado;'' que el derecho y el deber de todo ciudadano a reportar la comisión de un delito, debe ser ejercitado con gran cuidado y cuando el informante está convencido de su plena certeza; que la defensa había tratado de probar que el denunciante era culpable de un delito no obstante la admisión hecha por la misma defensa (declaración del abogado, *supra*) de que la prueba era insuficiente para sostener una condena; que no se podía presumir que el denunciante había cometido un delito mientras la ley lo considera inocente, aun cuando esté sometido a un cargo formal; que en cuanto al elemento de malicia, si el acusado hubiera hecho una ligera investigación de los hechos imputados al denunciante él hubiera quedado convencido de que los mismos no eran ciertos y no hubiera escrito la carta; que desgraciadamente en Puerto Rico se están empleando medios para destruir las reputa-

ciones bien cimentadas por personas sin escrúpulos que no vacilan en recurrir a la calumnia y a las mentiras para perjudicar reputaciones que están muy por encima del nivel moral de los individuos sin escrúpulos a que se ha hecho referencia; y que la actuación del acusado al escribir la carta no había estado justificada.

El fiscal en su alegato no discute los méritos de la apelación, pero insiste en una moción de eliminación de la exposición del caso, y de ser suficiente la acusación en la confirmación de la sentencia.

No hay mucho que decir en favor de la exposición del caso. Sin embargo, la responsabilidad por la situación tal como ahora se encuentra no descansa enteramente sobre los hombros del apelante. La exposición, como fué presentada originalmente en la corte inferior, contenía, según parece, todo lo dicho por la corte o los abogados durante el juicio, sin tener en cuenta ninguna cuestión que hubiera de ser levantada en apelación. Lo único bueno que tenía era una exposición de la prueba en forma narrativa. Las enmiendas propuestas por el fiscal consistían en su mayor parte, en substituir el récord taquigráfico por la exposición narrativa de cada testigo en el caso, sin ninguna razón muy aparente para la propuesta substitución. El juez de distrito pasó el asunto al ex-juez que había juzgado el caso y certificó todos los autos en lo que concierne a la exposición tal como estaba, a la exposición original, a la moción del fiscal y la orden de referencia, como una verdadera exposición de todos los hechos, incluyendo las enmiendas por él permitidas.

Es de sentirse que más de veinte años después de la adopción del Código de Enjuiciamiento Criminal se vea esta corte obligada a examinar tales autos. No hemos obtenido ningún placer y muy poca satisfacción del proceso laborioso en llegar a cierto entendimiento sobre los hechos esenciales revelados por la prueba aducida en el juicio. Or-

dinariamente, desde luego, en tales circunstancias, no se pretendería hacer ninguna investigación o discusión de los méritos. Pero en el presente caso la tarea no ha demostrado ser imposible, como lo anunció el fiscal, y es más importante que el ciudadano en particular, cuando procede de buena fe y por motivos razonables, pueda sentirse libre para reportar a las debidas autoridades un supuesto delito sin temor a un proceso, que no que las reglas técnicas de procedimiento sean observadas estrictamente en cualquier caso particular. Ni debe tampoco hacérsele entender al informante, sea lo que fuere lo que se exija de él, que está en la obligación de hacer una investigación completa examinando testigos y preparando un caso para juicio o para ser sometido a un Gran Jurado, antes de divulgar los hechos de que tiene conocimiento, so pena de exponerse a un procedimiento criminal en el caso de que algún fiscal o abogado particular que haya sido empleado, después de tal investigación y de una madura deliberación, resuelva finalmente que la prueba que ha podido considerarse es inadecuada para sostener un proceso, no obstante la opinión de tal investigador de que en realidad se había cometido un delito.

*Joseph* v. *Bears,* 135 Am. St. Rep. 1076, era una acción civil por el delito de calumnia. La segunda causa de acción expresada en la demanda alegaba que el cargo había sido hecho por el demandado por teléfono "a un tal Tarnutzer." Como defensa separada a esta causa de acción el demandado alegó "que Tarnutzer era el márshal de la villa de Prairie du Sac" y que el demandado había "telefoneado el hecho a dicho Tarnutzer, creyendo que él era un funcionario legal autorizado para verificar arrestos por delitos, únicamente con el fin de obtener el arresto del referido K. y sin malicia hacia el demandante."

Al resolver el caso la Corte Suprema de Wisconsin se expresó así:

"Debe existir la creencia de buena fe en el hecho de que se ha cometido un delito y de que la persona a quien se hace la comunicación es la debida persona o funcionario con quien debe dejarse la información a fin de que sea vindicada la justicia. Cuando el demandado ha probado estos dos hechos, indudablemente que él ha quedado libre del peso de la prueba. Entonces ha demostrado él *prima facie* por lo menos que su comunicación fué hecha en el cumplimiento de su deber, por un sentido de obligación y en la creencia honrada de su veracidad. No está obligado a ir más lejos y probar que un hombre más astuto hubiera descubierto la falsedad de los supuestos hechos. La cuestión es esta: ¿Creyó él honradamente que lo que dijo era cierto? No si algún otro hombre estando en su situación lo hubiera creído: Odgers sobre Libelo y Calumnia, edición 4ª., pág. 330. Su creencia debe, por supuesto, fundarse en alguna información. Las meras manifestaciones precipitadas, o las que en nada se fundan como información, no están protegidas, porque no puede decirse que han sido hechas de buena fe; pero las manifestaciones que honradamente se creen ser ciertas, basadas en alguna información palpable y hechas con el honrado deseo de promover la justicia pública, y dadas al debido funcionario, o a uno que se supone justamente que es el debido funcionario, están protegidas aunque alguna persona más prudente quizás no hubiera creído en la certeza de la información en que se basa la manifestación: Clark v. Molineus, L. R. 3 Q. B. D. 237. Cuando el caso *prima facie* de privilegio se ha establecido de tal modo mediante prueba de que la comunicación se hizo en el cumplimiento de un deber público y en la creencia honrada de su certeza, es el deber del demandante, como en otros casos de comunicaciones privilegiadas, probar la verdadera malicia por algunos hechos tendentes a establecer un móvil malicioso o culpable: *Calkins* v. *Summer*, 13 Wis. 193, 80 Am. Dec. 738; *Hemmens* v. *Nelson*, 138 N. Y. 517, 34 N. E. 342, 20 L. R. A. 440; *Dale* v. *Harris*, 10 Mass. 193; 8 Ency. of Ev. 220."

El mismo principio, si es correcto, parece ser aplicable a *fortiori* a un proceso por un libelo criminal. *Newal*, 3ª. ed., pág. 1158, sección 1114.

En el mismo tomo y en las páginas 601 y 608, secciones 595 y 601, encontramos lo siguiente:

"Es un deber que toda persona debe a la sociedad y al estado

en que vive el ayudar en la investigación de cualquier alegada
mala conducta y estimular el descubrimiento del delito. Toda in-
formación dada de buena fe como consecuencia de cualquier in-
vestigación hecha con este fin es claramente privilegiada. Pero este
deber no surge meramente cuando se hacen investigaciones confi-
denciales. Si llegan a conocimiento de cualquier persona hechos
que razonablemente le inducen a creer que se ha cometido o está
para cometerse un delito, su deber es informar inmediatamente a
las autoridades públicas o a las personas interesadas.

"El querellante debe tener cuidado en acudir a alguna per-
sona que tenga jurisdicción para conocer de la querella, o facultad
para reparar el agravio, o algún deber o interés en relación con
él. Las manifestaciones hechas a algún extraño que no tiene nada
que ver con el asunto no pueden ser privilegiadas. Si una per-
sona acude a la persona que no es la debida por alguna equivo-
cación natural y honrada en cuanto a las funciones respectivas de
varios funcionarios de Estado, semejante error simple y no inten-
cional no excluirá, en América, el caso del privilegio. Pero si ella
de un modo descuidado hace manifestaciones a alguien que, como
debe saber, no tiene absolutamente ningún interés en el asunto, el
privilegio se pierde."

En *Ruling Case Law,* página 358, sección 106, tomo 17,
la regla se enuncia en esta forma:

"Una persona que hace una comunicación a un oficial de orden
público con respecto a la comisión de un delito no está sujeta a
una acción por libelo o calumnia, de acuerdo con el peso de las
autoridades, si la comunicación se hizo de buena fe con el fin de
traer al ofensor ante la justicia."

Y una nota al caso de *Miller* v. *Nickolls,* 4 L. R. A. (N.
S.) 149, dice lo siguiente:

"El derecho a exención de responsabilidad por libelo o calum-
nia que surge de una comunicación informal hechas a un funcio-
nario legal con respecto a la mala conducta o falta criminal de
otra persona, por el fundamento de que tal comunicación era pri-
vilegiada, parece depender del punto de si fué hecha de buena fe,
en el cumplimiento de un deber público para adelantar una inves-
tigación legal, o por algún otro motivo justificado, o si se hizo para
dar paso a la malicia o el rencor."

Véase también el caso de *Flynn* v. *Boglarsky* y nota al de *Beshira* v. *Allen,* L. R. A. 1915 E. 413.

En el presente caso no sólo fué dirigida la comunicación libelosa al jefe ejecutivo, sino que fué escrita por el comisionado municipal de instrucción, quien tenía tras sí un récord de unos quince años en el servicio del Gobierno Insular, once años de experiencia como maestro en las escuelas públicas y cuatro años como inspector de sanidad insular. En la carta se llama especialmente la atención hacia el hecho de que el denunciante en este caso era entonces miembro de una asamblea municipal. Llama la atención al estado político local como típico de una supuesta condición deplorable que generalmente existe en toda la Isla. Se refiere y parece haber sido una especie de reflexión tardía o posdata a otra carta remitida con ella solicitando que se hiciera una investigación de otros asuntos. Dice que el informante recibió la información en ella contenida precisamente el mismo día de su regreso de San Juan. Concluye en la seguridad de que si el anterior ejecutivo a quien fué dirigida la comunicación había venido a hacer justicia, él encontraría mucho trabajo. Está marcada "confidencial." Todo el tono de la comunicación implica que hubo alguna entrevista o entendimiento anterior si no una invitación o solicitud por información.

Una comunicación oficial con la firma del anterior Attorney General, dice lo siguiente:

"Fiscal de Distrito, Guayama, P. R.—Señor: En relación a la carta e informe sometidos por usted en el asunto del Sr. Arsenio Rodríguez Morales, le devuelvo con ésta todos los documentos relativos al caso para que usted resuelva si procede o no iniciar un proceso por libelo contra él. Es necesario que usted resuelva, antes de proceder de tal modo, si las manifestaciones hechas por él se hicieron maliciosamente, y usted puede al llegar a tal conclusión tomar en consideración el hecho de que estas manifestaciones parecían no estar sostenidas por prueba de ninguna clase. Sírvase informarme de la resolución que tome en este asunto."

Es una circunstancia significativa que el autor de esta comunicación no encontrara ninguna prueba de malicia de la faz de la alegada comunicación libelosa. La conclusión en cuanto a la falta de causa probable se funda en el informe del fiscal que hizo la investigación y luego dirigió el proceso en este caso, herido por un resentimiento debido a la censura incidental sobre su misma conducta oficial anterior. Ni encontramos tampoco en la comunicación descrita en la acusación ninguna de las características de la malicia. El concepto del apelante del deber cívico puede estar sujeto a censura, pero hay mucho lugar para discusión sobre este punto, y su comunicación al Gobernador no revela improbidad de pensamiento ni falta de sinceridad de propósito.

En el juicio el acusado declaró que él aceptó de buena fe el informe que le dió el cuñado; que no tenía motivo para dudar de él; que después de hablar con la madre y la hija de ella que se dijo era de trece años de edad, el testigo creyó que como era de edad escolar podía ser la niña de quien el cuñado le había hablado; que el caso le impresionó mucho y le pareció que era una cosa grande que no "debía quedar impune;" que el testigo tenía indicios de que podría haber algo; por eso fué que escribió la carta; si no hubiera tenido indicios no la hubiera escrito; el testigo tenía conocimiento de que había sucedido, pero no se acordaba del nombre del padre; que el testigo no informó al fiscal debido a que le infundió sospechas.

En el examen de repreguntas el testigo fué acosado en cierto modo por el fiscal en relación con una declaración anterior hecha bajo juramento so pretexto de establecer la base para atacar su credibilidad. Los autos indican que la defensa anunció finalmente que aceptaría la declaración de referencia como hecha por el acusado, siendo entonces ofrecida como prueba por el fiscal y admitida sin objeción. Ese documento parece haber sido pasado por alto por el fiscal al

preparar sus propuestas enmiendas a los autos y a él no se hace indicación por el juez sentenciador en su opinión. No existe nada en los autos que contradiga, y sí mucho que corrobore, la declaración del acusado.

El alegado escrito libeloso era, por su faz, como hemos dicho, *prima facie* privilegiado, y no encontramos ninguna prueba de malicia por parte del acusado.

El poder ejecutivo supremo en esta Isla está investido en un funcionario ejecutivo cuyo título oficial es "El Gobernador de Puerto Rico." El tiene la supervisión y control de todos los departamentos, incluyendo el Departamento de Justicia, en tanto no esté en conflicto con las disposiciones de la Ley Orgánica, y es responsable del fiel cumplimiento de las leyes.

Si el Gobernador es o no la debida autoridad a quien un miembro del concejo de administración de un municipio adyacente debe reportar la comisión de un delito de *felony*, cometido por un miembro de la asamblea municipal, cuyo miembro del concejo cree que sería inútil llevar el asunto al fiscal de distrito local, es una cuestión que no fué levantada en la corte inferior ni por ninguna de las partes en la apelación ante esta corte. Es un asunto cuya resolución final puede dejarse en suspenso, sin que sea impropio hacerlo así, hasta que se suscite la cuestión.

Pero sea esto como fuere, estamos persuadidos, después de una debida consideración de toda la prueba, que el mismo apelante nunca dudó por un momento de que él se estaba dirigiendo a la debida autoridad.

Debe revocarse la sentencia apelada.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Aldrey y Franco Soto.

El Juez Asociado Sr. Wolf firmó "conforme con la sentencia."

Opinión Concurrente del Juez Asociado Sr. Wolf.

De acuerdo con el artículo 1687 de los Estatutos Revisados, definiendo el libelo y la calumnia, la malicia no se presume cuando una persona escribe a un funcionario oficial, apoyada en causa probable, con la intención de servir al procomún o de conseguir remedio a un perjuicio hecho a un particular. En este caso, según se expone en la opinión de la mayoría, la prueba demostró que el acusado tenía la intención de servir al procomún o de conseguir remedio a un perjuicio particular. Por esta razón concurro en la opinión de la mayoría. No estoy conforme con que una carta escrita al Gobernador sea *prima facie* privilegiada, pero cuando va así dirigida un acusado puede más fácilmente demostrar su intención de servir al procomún o de conseguir remedio a un perjuicio hecho a un particular.