NÉSTOR CORTÉS PORTALATÍN ET AL., demandantes y recurridos, *v.* ROBERTO HAU COLÓN, demandado y recurrente.

*Número:* R-71-190      *Resuelto:* 23 de abril de 1975

*Castro & Castro,* abogados del recurrente.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

La transcripción de evidencia sometida revela la siguiente situación de hechos en este caso de daños y perjuicios, cuyo énfasis recae en la alegada difamación que sufre el recurrido.

Al día siguiente de regresar de un viaje a San Juan, el señor Roberto Hau, vecino de Isabela, advirtió la desaparición de un revólver que guardaba en el sitio donde tenía su máquina de afeitar y otros artículos de uso diario. Le preguntó a su hijo de dieciséis años si alguien había estado en su casa durante su ausencia y éste le informó que un empleado de la Autoridad de Acueductos y Alcantarillados había efectuado en ella una investigación relacionada con una petición del recurrente de que se revisara su factura de consumo de agua. El señor Hau le informó a la policía inmediatamente la ausencia del revólver y las circunstancias de su desaparición. La policía le solicitó al recurrente que obtuviera el nombre y la dirección del empleado de la Autoridad. El recurrente le diri-

gió entonces una carta al Ing. F. A. Christian, Administrador de la Autoridad para el distrito de Arecibo, concebida en los siguientes términos:

"El día 27 de noviembre de 1968 vino a mi casa un empleado de ustedes y sin mi autorización o la de mi esposa, entró a mi casa, abrió la llave de paso del inodoro para en esa forma justificar el consumo en exceso, que ustedes alegan. Excelente excusa para justificar el consumo. Por tener yo conocimiento de la reciente rotura de la junta del inodoro exactamente se mantiene la llave de paso cerrada. Este empleado entró con mi hijo menor de edad (un niño). Entiendo que esto es una falta de respeto, un abuso de confianza. Además, acaba de desaparecer de mi casa, mi revólver S&W, Calibre 38, serie #27517, por lo tanto necesito el nombre y los dos apellidos del empleado y la dirección, para informarlo a la policía, ya que es la única persona a quien no conozco ni he autorizado a entrar en mi casa. Estando también el baño al lado de mi cuarto.

Una cosa hay que no puedo entender, porqué no aceptan el cambio de contador como la realidad en la diferencia de lectura. Si es que le han informado que no se cambió el contador, entonces sí que se requiere una investigación cuidadosa porque pueden haber graves deficiencias envueltas."

El referido Administrador les remitió esta carta a dos funcionarios de la Autoridad en Isabela para practicar la investigación correspondiente. Estos interrogaron al empleado recurrido y, convencidos de su inocencia, visitaron al señor Hau en su casa para explicarle que el recurrido era una persona proba. El señor Hau aceptó la explicación e invitó inmediatamente a sus visitantes a acompañarle al cuartel de la policía, lo que hicieron, solicitando allí el recurrente que se eliminase cualquier investigación que fuera a hacerse contra el empleado recurrido, el señor Cortés Portalatín, cuyo nombre no se le había suplido antes a la policía. No se produjo denuncia o acusación contra el señor Cortés Portalatín, quien continuó en su puesto, aunque con cierta alteración en sus funciones, y a quien se le aumentó el sueldo. Concluyó el ilustrado juez de instancia que "todos los compañeros de trabajo del de-

mandante se enteraron de la carta y querella enviada por el demandado al señor Christian, tanto los de la oficina de Arecibo como los de la oficina de Isabela. Sus vecinos también se en· teraron de dicha carta." No hubo determinación alguna por el juez, sin embargo, ni el récord la permite, al efecto de que tal publicidad se debiese a acto alguno del señor Hau. Tampoco existe determinación alguna o base para ella al efecto de que las comunicaciones del señor Hau con la policía y el Ing. Christian respondiesen a propósitos aviesos o maliciosos o a hostilidad contra el señor Cortés Portalatín.

Ocho meses después de los hechos, el señor Cortés Portalatín dedujo demanda junto a su señora esposa por daños a su reputación y sufrimientos físicos y mentales. Visto el caso, el tribunal de instancia falló que la carta transcrita es de naturaleza difamatoria y condenó al recurrente a satisfacerle dos mil dólares a los demandantes recurridos, más las costas y trescientos dólares de honorarios de abogado.

El derecho relativo a la protección de la honra ha llevado una vida movida en nuestro país. El Derecho Civil rigió su desarrollo y estableció sus límites por varios siglos, derivando sus normas, por supuesto, del Derecho Romano y su amplio concepto de *iniuria*. Radin, *Roman Law*, West Publishing Co., 1927, pág. 139 *et seq.*; Jolowicz, *Historical Introduction to the Study of Roman Law*, Cambridge Univ. Press, 1939, pág. 286 *et seq.*; *Pueblo* v. *Bird*, 5 D.P.R. 189 (1904).

A pesar de que el Derecho Común, con las diferencias históricas de rigor, tal como la distinción artificial y obsolescente entre la calumnia y el libelo, bebió también de la fuente del Derecho Romano al moldear sus normas en este sector, se estimó necesario en Puerto Rico aprobar una ley sobre el particular el 19 de febrero de 1902, 32 L.P.R.A. sec. 3141 y ss. Véase: Donnelly, *History of Defamation*, Wis. L. Rev. 99 (1949). Esta Ley de Libelo y Calumnia ha sentado por varias décadas los principios centrales de esta parte del derecho puertorriqueño, pero a partir de 1952 diversos preceptos cons-

titucionales afectan seriamente el análisis de muchas soluciones antiguamente derivables de la ley de 1902.

Esto ha sido así en el propio Estados Unidos desde la decisión de *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964), y su numerosa progenie. El problema en Puerto Rico es más complicado, sin embargo, ya que hay que determinar no sólo el efecto de la libertad de expresión sobre lo que se haya legislado o se legisle en esta zona del derecho, sino el impacto también de otras disposiciones constitucionales.

La Sec. 8 del Art. II de nuestra Constitución establece, por ejemplo, que "Toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar." Esto significa que el derecho en éste campo tomó nuevamente otro giro en 1952. La fuente principal de la protección contra injurias es desde entonces la Constitución, no la ley de 1902. Esta sobrevive tan sólo en cuanto es compatible con la Constitución. Ya hemos decidido que no es necesario legislar como condición al ejercicio de los derechos que esta sección establece. *Alberio Quiñones* v. *E.L.A.,* 90 D.P.R. 812 (1964).

La sección constitucional citada, propuesta por don Heraclio Rivera Colón—Proposición Núm. 11 de la Convención Constituyente—es una repetición exacta del Art. V de la Declaración Americana de los Derechos y Deberes del Hombre y entronca también con el Art. 12 de la Declaración Universal de los Derechos del Hombre. Representando así esta sección, como varias otras, un principio con aspiraciones de universalidad, destilado de muy diversos sistemas jurídicos, ancho es el mundo que se nos brinda para su interpretación justa. No se está obligado por juegos específicos de reglas históricas. La obligación es acatar el mandato constitucional, en consonancia con otras disposiciones de nuestra ley primaria y las realidades del país. En ausencia de conflicto constitucional u otras razones válidas de ley, no deben descartarse ligeramente, como es natural, normas establecidas por la legislación anterior o la

jurisprudencia que representen modos adecuados de armonizar intereses contradictorios en campo tan sujeto a desenvolvimiento constante.

■ El caso de autos representa de hecho una situación fácilmente resoluble por reglas familiares. 32 L.P.R.A. sec. 3144 (3). Es un caso típico de inmunidad o privilegio restringido, útil doctrina para conciliar el interés en la reputación individual y otros intereses igualmente legítimos. Un ciudadano que sospeche razonablemente que se ha cometido o que se piensa cometer un crimen tiene el privilegio, para su protección y la de la sociedad, de comunicárselo a las autoridades correspondientes o a quien él crea de buena fe que pueda tomar acción correctiva. La comunicación puede ser falsa, pero el privilegio persiste. *Quiñones v. J. T. Silva Banking and Commercial Co.*, 16 D.P.R. 696 (1910); Prosser, *Handbook of the Law of Torts*, 4ª ed., West Publishing Co., 1971, págs. 791–794; *New York and Porto Rico S.S. Co. v. García*, 16 F.2d 734 (1st Cir. 1926).

■ Se pierde la inmunidad si la comunicación se entabla con quien no existe razón para creer que puede proteger el interés del actor o de la comunidad, según sea el caso; o si el actor le imparte publicidad excesiva al asunto; o si el actor se mueve por motivos impropios. *Romany v. El Mundo, Inc.*, 89 D.P.R. 604 (1963); *Pueblo v. Polo*, 14 D.P.R. 786 (1908); *Pueblo v. Rodríguez*, 32 D.P.R. 327 (1923); Prosser, *op. cit.*, 792 *et seq.* El hecho de que otras personas escuchen o lean incidentalmente una comunicación hecha de modo razonable no anula el privilegio. *Quiñones v. J. T. Silva Banking and Commercial Co.*, supra.

Las comunicaciones a la policía del género que nos concierne están cubiertas muy particularmente por la doctrina del privilegio restringido. *Restatement of the Law of Torts, Second, Tentative Draft No. 20*, April 25, 1974, sec. 594, págs. 190, 194; sec. 598, pág. 213. Así debe ser, pues si la ciudadanía sólo pudiese querellarse, aun razonablemente, a los

agentes del orden público sobre la posible comisión de delitos bajo la amenaza de responsabilidad por difamación u otras acciones por daños y perjuicios, se afectaría sensiblemente la lucha contra el crimen. No significa este principio, del otro lado, que la reputación de las personas queda totalmente a la merced de ataques infundados. Las restricciones que se le imponen al privilegio entrañan protección adecuada, como exige nuestra Constitución, contra ataques abusivos a la honra.

■ En el caso presente el señor Hau les notificó a los funcionarios debidos la desaparición de su revólver. Se dirigió a la policía y, a instancia de ésta, al Administrador de Distrito de la Autoridad de Acueductos. Aun de no habérselo requerido la policía, tenía derecho a quejarse también a dicho Administrador de la alegada conducta del subordinado de quien sospechaba. *Restatement Second*, supra, 214. No se probó que la queja se debiese a motivos impropios o que fuese irrazonable o que se le impartiese publicidad por el recurrente a otras personas o que se excediesen de otro modo las condiciones de la inmunidad restrictiva. Sobre este particular debe recordarse que, establecido el privilegio, el peso de la prueba respecto a su abuso recae enteramente sobre el demandante. *Romany* v. *El Mundo, Inc.*, 89 D.P.R. 604 (1963) ; *Restatement Second*, supra, sec. 613, pág. 267 *et seq*. Aun asumiendo, por tanto, el carácter infamatorio de la carta al Ing. Christian, asunto que cuestiona el recurrente fundándose en *Rodríguez* v. *Waterman Dock Co.*, 78 D.P.R. 738 (1955), no hay base en el récord para responsabilizar al recurrente por difamación o injuria. Tampoco existe fundamento para hallarle incurso en persecución maliciosa, *Rodríguez* v. *Waterman Dock Co.*, supra, a la pág. 741, o por culpa o negligencia bajo las disposiciones generales del Art. 1802 del Código Civil. *Cf. Romany*, supra.

En vista de la determinación expresada, es innecesario que nos pronunciemos en el caso de autos sobre el efecto de los derechos constitucionales a la libre expresión, a solicitar del

Gobierno la reparación de los agravios y otros derechos reservados a la ciudadanía en una democracia.

*Se revocará la decisión recurrida.*