# 96 DTA 89

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE BAYAMON**

JOSE A. CALDERON MOLINA
Demandante-Apelante

v.

JESUS ROSADO QUIÑONES
Demandado-Apelado

Núm. KLAN-95-00457

San Juan, Puerto Rico, a 14 de febrero de 1996

Panel integrado por su presidenta, Juez Fiol Matta
la Juez Rodríguez de Oronoz y el Juez Gierbolini

Fiol Matta, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 13 de octubre de 1994, el Sr. José A. Calderón Molina interpuso ante el Tribunal Superior, Sala de Bayamón, una demanda reclamando daños y perjuicios contra el Sr. Jesús Rosado Quiñones, la sociedad legal de gananciales compuesta por éste y su esposa y la Mueblería Rosado, Inc. Alegó que el 26 de marzo de 1994, el señor Rosado, dueño de la Mueblería Rosado, Inc., fue víctima de un robo y señaló a dos individuos como perpetradores del mismo, indicando que conocía a uno de ellos y que éste le apuntó con un revólver niquelado. La persona así señalada era, precisamente, el demandante-apelante Calderón Molina. En aquel entonces, el señor Rosado indicó a las autoridades que conocía al señor Calderón Molina, porque la madre de éste era cliente de la mueblería.

Por estos hechos, José A. Calderón Molina fue encausado por violación a los artículos 6 y 8 de la Ley de Armas y por el delito de robo. El 3 de junio de 1994 se le determinó causa probable para arresto, imponiéndosele $10,000 de fianza, suma que no prestó, por lo que fue recluido en prisión sumariamente hasta el 5 de julio de 1994. En esa fecha se celebró la vista de causa probable y no se encontró causa para acusar. Afirmó la parte ahora apelante en su demanda que la razón que medió para la determinación de no causa fue la defensa de coartada.

Conforme surge del pliego de denuncia que la parte demandante-apelante acompaña con su Recurso de Apelación, a la vista preliminar comparecieron como testigos, además de Jesús Rosado Quiñones, el señor Belkin Vizcarrondo y el Policía José O. Torres. Contra estos otros testigos no se interpuso reclamación alguna.

En su demanda, José A. Calderón Molina reclama daños y perjuicios por el tiempo que estuvo privado de su libertad. Reclama, además, los daños sufridos porque "la noticia del robo a la Mueblería y la fotografía como acusado por los hechos salió en el periódico El Vocero del miércoles 8 de julio de 1994, *"humillándolo y sometiéndolo a vejámenes públicos a él y a su familia"*. Por todo ello, alegó daños ascendentes a $500,000 por sufrimientos por la privación de libertad y $2,000 por pérdida económica en su trabajo. ■

El 26 de enero de 1995 la co-demandada, Mueblería Rosado, Inc. (Mueblería Rosado), solicitó que se dictase sentencia sumaria por entender que no estaban presentes los elementos de la acción por concepto de persecución maliciosa. Invocó la norma jurisprudencial establecida en el caso de *Raldiris v. Levitt & Son,* 103 D.P.R. 778, 781, (1975) y en los casos *Cortés Portalatín v. Hau Colón,* 103 D.P.R. 734 (1975); *Ayala v. San Juan Racing,* 112 D.P.R. 804 (1982); *Ocasio v. Alcalde de Maunabo,* 121 D.P.R. 37 (1988); *Toledo v. Cartagena,* ___ D.P.R. ___ , **92 J.T.S. 173**; *Porto v. Bentley,* ___ D.P.R. ___, **92 J.T.S. 175** y *Parrilla v. Airport Catering Services,* ___ D.P.R. ___, **93 J.T.S. 66.**

Mediante escrito de 22 de febrero de 1995, el señor Calderón Molina se opuso a la solicitud de sentencia sumaria. En su escrito repitió las mismas alegaciones fácticas de la demanda. Por su parte, la co-demandada Mueblería Rosado reiteró su solicitud de sentencia sumaria, basándose en que la réplica de la parte demandante-apelante no planteaba hechos que impidieran que la misma se dictase; que no se había relacionado a la Mueblería Rosado en modo alguno con la noticia publicada y que el hecho de que se hubiese acogido la defensa de coartada en el caso penal no tenía el efecto legal de dejar sin efecto la inmunidad cualificada que le asistía al demandado-apelado.

El Tribunal de Primera Instancia dictó la sentencia sumaria aquí apelada al amparo del privilegio restringido reconocido por la Sección 3 de la Ley de Libelo y Calumnia, 32 L.P.R.A. 3144, ■ conforme ha sido interpretado en los casos de *Cortés Portalatín, supra, Ojeda Ojeda v. El Vocero, Inc.,* ___ D.P.R. ___, **94 J.T.S. 131** y *Rosado v. Rosado,* 51 D.P.R. 115 (1937). En cuanto a la oposición del demandante expuso lo siguiente:

*"A la moción de Sentencia Sumaria del co-demandado Mueblería Rosado fundamentada con documentos incluyendo la declaración jurada del demandado y la determinación en el caso criminal 94-4618, 469419 y 4620, la parte demandante se limitó a alegar que existen los elementos de persecución maliciosa y difamación civil. La parte demandante no discutió ni presentó declaraciones juradas u otra prueba que rebatiera la inmunidad restrictiva o descargara el peso de la prueba que se requiere. Regla 36.5 de las de Procedimiento Civil. La parte demandante no ha presentado una*

*controversia sustancial de hechos que impida que se dicte Sentencia Sumaria. A tenor con la Regla 36 de las de Procedimiento Civil y en derecho procede la desestimación de la demanda pues la demandante no ha presentado alegaciones ni ha descargado su responsabilidad en relación con la inmunidad restrictiva."*

La apelación se interpuso oportunamente el 5 de mayo de 1995. El 8 de agosto se solicitó su desestimación por cuanto no se había notificado al apelado Rosado, habiéndose enviado la notificación tan sólo al Lcdo. Pablo Carrasquillo. Expone el Lcdo. Juan Marín Hernández, quien suscribe la referida moción, que él es el representante del señor Rosado en su capacidad personal. Explica que *"el abogado que suscribe compareció en el Tribunal de Primera Instancia en representación de la parte compareciente así como también en unión al distinguido compañero Pablo Carrasquillo ostentamos la representación del apelado Mueblería Rosado, Inc."*.

Alega, pues, que no se perfeccionó el recurso, por cuanto no se notificó *"a los abogados de todas las partes, o en su defecto, a éstas antes o en la misma fecha de su presentación"*. Reglamento del Tribunal de Circuito de Apelaciones, Regla 14(C)(1). En realidad, dicha falta de notificación privaría al tribunal de jurisdicción sobre la parte que no fue notificada y sería razón para la desestimación con respecto a dicha parte. Regla 31 B(1).

La parte apelante se opuso a la desestimación alegada "por cuanto siempre ha notificado sus escritos al representante legal que aparece suscribiendo y firmando la moción titulada *"Moción de sentencia sumaria del co-demandado: Mueblerías Rosado, Inc."*. Surge del expediente que el abogado que presentó todos los documentos relacionados a dicha solicitud de sentencia sumaria, es el Lcdo. Pablo Carrasquillo, quien acudió siempre en representación de Mueblería Rosado, Inc.

El demandante-apelante argumenta que ambos abogados representan a todos los co-demandados. Sin embargo, el examen de los documentos que obran en el expediente apelativo indica que no es así. Por el contrario, resalta el hecho de que ni Jesús Rosado Quiñones ni la sociedad legal de gananciales de parte solicitaron en ningún momento que se dictase sentencia sumaria a su favor. Fue la Mueblería Rosado quien presentó esa solicitud, representada por el licenciado Carrasquillo. El alegato que la parte apelada presenta ante nos, por su parte, lo suscribe otro abogado, el Lcdo. Antonio Rodríguez Fraticelli, quien en su moción solicitando autorización del Tribunal para unirse a la representación legal, expresamente asumió la representación de la parte co-demandada-apelada.

Visto lo anterior, concluimos que no se notificó de la presente apelación al demandado Jesús Rosado Quiñones ni a la sociedad legal de gananciales compuesta por éste y su esposa Aida Mejías y por este motivo se desestima la apelación en lo que a ellos respecta.

Nos resta considerar las alegaciones del apelante en cuanto a la co-demandada apelada, Mueblería Rosado, Inc. El apelante alega que la Sala Superior del Tribunal de Primera Instancia incurrió en error *"al determinar y concluir que la parte demandante no alegó que existieran motivos impropios o se le impartiese publicidad por el demandado a otras personas o se excediese [sic] las condiciones de la inmunidad restrictiva"*. Hemos examinado el expediente apelativo y el derecho aplicable y concluimos que no le asiste la razón. Ello, a su vez, convierte en innecesaria la discusión de los demás errores alegados.

Como sabemos, el derecho de daños en nuestra jurisdicción se rige por el sistema de derecho civil. *Valle v. American International Ins. Co.*, 108 D.P.R. 692 (1979). Por ello, no depende de que se configuren determinadas causas de acción previamente reconocidas por ley o jurisprudencia, como es el caso de las acciones torticeras o *"torts"* del sistema de derecho común angloamericano o del derecho antiguo europeo previo a la codificación. Es la nuestra *"una disposición general de alcance absoluto y universal para la reparación de todo daño ilícito causado". Reyes v. Sucn. Sánchez Soto*, 98 D.P.R. 305, 311 (1970). Acorde a esto, todo perjuicio, moral o material, da lugar a reparación si se establece la realidad del daño sufrido y el nexo o relación de causalidad entre dicho daño y una acción u omisión de otra persona que sea de naturaleza culposa o negligente. La jurisprudencia, por su parte, ha desarrollado numerosos criterios que concretan estos principios generales en determinadas circunstancias. Por eso, cuando se alega, como aquí, que los daños surgen por razón de persecución maliciosa, debemos examinar la jurisprudencia para precisar lo que constituye una acción culposa o

negligente, en el contexto del deber ciudadano de informar sobre la comisión de un delito. Este examen demuestra que los criterios jurisprudenciales así desarrollados surgen de la necesidad de asegurar tanto la dignidad, honra y tranquilidad de todo ciudadano como la colaboración de la ciudadanía con las autoridades encargadas de su seguridad.

Así, en *Cortés Portalatín v. Hau, supra,* página 739, el Tribunal Supremo adoptó la doctrina de la inmunidad restringida, que llamó *"útil doctrina para conciliar el interés en la reputación individual y otros intereses igualmente legítimos".* Explicó esta doctrina como sigue:

"Un ciudadano que sospeche razonablemente que se ha cometido o que se piensa cometer un crimen tiene el privilegio, para su protección y la de la sociedad, de comunicárselo a las autoridades correspondientes o a quien él crea de buena fe que pueda tomar acción correctiva. La comunicación puede ser falsa, pero el privilegio persiste. *Quiñones v. J.T. Silva Banking and Commercial Co.,* 16 D.P.R. 696 (1919); Prosser, *Handbook of the Law of Torts,* 4th ed., West Publishing Co., 1971, págs. 791-794; *New York and Porto Rico S.S. Co. v. García,* 16 P.2d 734 (1st Cir. 1926).

Se pierde la inmunidad si la comunicación se entabla con quien no existe razón para creer que puede proteger el interés del actor o de la comunidad, según sea el caso; o si el actor le imparte publicidad excesiva al asunto; o si el actor se mueve por motivos impropios. *Romany v. El Mundo Inc.,* 89 D.P.R. 604 (1963); *Pueblo v. Polo,* 14 D.P.R. 786 (1908); *Pueblo v. Rodríguez,* 32 D.P.R. 327 (1923); Prosser, op. cit., 792 *et seq.* El hecho de que otras personas escuchen o lean incidentalmente una comunicación hecha de modo razonable no anula el privilegio. *Quiñones v. J.T. Silva Banking and Commercial Co., supra.*

Ese mismo año resolvió el Tribunal el caso de *Raldiris v. Levitt & Son, supra,* página 781. En éste expresó lo siguiente:

*"Para que prospere una acción de daños fundada en la promoción, por el demandado, de un proceso criminal contra el demandante es necesario que se pruebe (a) que el demandado instigó dicha acción maliciosamente, (b) sin causa probable, (c) que la acción terminó de modo favorable para el demandante y (d) que éste sufrió daños. Parés v. Ruiz, 19 D.P.R. 342, 346 (1913)."*

Aclaró más adelante, en la misma página, lo siguiente:

*"Reiteradamente hemos expresado que el mero hecho de informar a las autoridades la comisión de un delito no es suficiente para imponer responsabilidad, sino que debe demostrarse que el demandado instigó activa y maliciosamente la iniciación del proceso y que no fueron las autoridades quienes a base de su propia evaluación de los hechos decidieron procesar al demandante. Parés v. Ruiz, supra; Rosado v. Rosado, 51 D.P.R. 115 (1937); Jiménez v. Sánchez, supra; Torres v. Marcano, 68 D.P.R. 880 (1948); Jiménez v. Sánchez, 76 D.P.R.. 370 (1954); Rodríguez v. Waterman Dock Co.g 78 D.P.R. 738 (1955); García Calderón v. Galiñanes Hermanos, 83 D.P.R. 318 (1961); Martínez Rivera v. Sears Roebuck, 98 D.P.R. 641 (1970); Prosser, op. cit. págs. 836-837."*

El mero hecho de suministrar información a un agente del orden público --juez, fiscal o policía-sobre determinados hechos no constituye de por sí la instigación que se requiere como elemento de esta acción. Es preciso que medie una imputación maliciosa, hecha de mala fe y sin fundamento razonable. Una afirmación que responda a una creencia razonable no conlleva responsabilidad alguna. De otra forma, se estaría obstaculizando el procedimiento de investigación de las autoridades competentes dirigido al esclarecimiento de los hechos a los fines de exigir la responsabilidad que corresponda. *García Calderón v. Galiñanes Hermanos,* 83 D.P.R. 318, 320 (1961).

Esta doctrina se reitera posteriormente en *Ocasio v. Alcalde Mun. de Maunabo, supra,* y en *Parrilla Báez v. Airport Catering Services,* ___ D.P.R. ___ (1993), **93 J.T.S. 66**.

Allí, a la página 10667, se recalcó:

*"La acción por persecución maliciosa no es favorecida por los tribunales, ya que ésta tiende a desalentar el que la ciudadanía coopere con el Estado en la persecución de los delitos. Esta acción*

© 1996 PUBLICACIONES JTS®™ — LUIGGI ABRAHAM — EDITOR

*requiere que se haga un balance entre el interés de la comunidad en general en que se investigue y se persiga la comisión de delitos y el igualmente importante interés social de que no se atropelle ni se persiga, arbitraria y maliciosamente, a los ciudadanos inocentes...,"*

En cuanto a la acción de daños por difamación, el demandante-apelante fundamenta ésta estrictamente en que el demandado le imputó la comisión de un delito. Nada alega en cuanto a la intervención del demandado-apelado, si alguna, en la publicación de la información sobre su acusación. En *Ojeda v. El Vocero Inc.* ___ D.P.R. ___ (1994), **94 J.T.S. 131**, el Tribunal señala que no es suficiente la falsedad de la información publicada, sino que en el caso de personas privadas, debe demostrarse, además, que la imputación se hizo en forma negligente. Estos casos *"se resolverán, como regla general, bajo la normativa de los daños y perjuicios extracontractuales, es decir examinando si hubo un acto u omisión culposa o negligente, daños y la relación causal entre esos dos elementos..."* *Ojeda v. El Vocero, supra*, página 332.

La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3, dispone que se dictará sentencia sumaria *"si las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, **demostraren que no hay controversia real sustancial en cuanto a ningún hecho material,** y que como cuestión de derecho, debe dictarse la misma a favor de la parte promovente."* (énfasis suplido).

Cuando se utiliza sabiamente, el mecanismo procesal de la sentencia sumaria ayuda a descongestionar el pesado y complicado calendario de casos civiles pendientes en los foros de instancia, lográndose de esta forma la rápida y eficiente solución de muchos litigios. Como se trata de un remedio extraordinario, nuestro ordenamiento procesal impone al juez que considera una solicitud de sentencia sumaria la obligación de considerar, como hemos señalado, todas *"las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas"* amén de *"todo documento admisible en evidencia"* que obre en autos, con el propósito de determinar si queda algún hecho material en controversia o si subsisten alegaciones afirmativas en la demanda radicada que no se hayan refutado. Sin embargo, una vez comprueba que no hay controversia sobre hechos materiales, el juez deberá dictar sentencia sumaria, aunque sólo en los términos que sean procedentes en derecho. Véanse, entre otros, *Cuadrado v. Santiago Rodríguez,* Opinión de 30 de abril de 1990, **90 J.T.S. 59**; *Corp. of Presiding Bishop* 117 D.P.R. 714 (1987); *Jorge v. Universidad Interamericana,* 109 D.P.R. 505, 512 (1980); *Padín v. Rossi,* 100 D.P.R. 259 (1971); *Mercado Riera v. Mercado Riera,* 87 D.P.R. 566, 567 (1972).

En el caso de autos, el demandante alegó en su demanda que el señor Rosado lo señaló como una de las personas que perpetraron un robo a mano armada, que fue acusado por esos hechos y se le impuso una fianza que no pudo prestar, por lo que estuvo recluido durante dos meses y medio. Expuso, además, que *"se determinó no causa debido a que no era la persona que cometió el delito"* y que el periódico El Vocero publicó *"la noticia del Robo [sic] a la Mueblería [sic] y la fotografía como acusado por los hechos".* Ante la moción de sentencia sumaria de la co-demandada Mueblería Rosado, se limitó a repetir, en esencia, lo anterior y añadió un listado de doctrinas y jurisprudencia referentes a la acción en daño por difamación. No expuso hechos, ni en su demanda ni en su oposición a la solicitud de sentencia sumaria, que demostrasen malicia de parte del Sr. Jesús Rosado, ni siquiera que la publicación de la noticia fuese instigada o promovida por éste. Tampoco expuso hechos que indicasen que la publicación estuviese en alguna otra forma relacionada a otra actuación de la co-demandada Mueblería Rosado que no fuese la denuncia del demandante por su dueño. ■ Realmente, no aduce hecho alguno que apoye siquiera su alegación de negligencia, sobretodo frente a la inmunidad restringida que la jurisprudencia otorga en situaciones como la de autos. Por tanto, no erró el tribunal de instancia al dictar sentencia sumaria y procede su confirmación.

. Por lo anterior, se desestima la apelación en cuanto a los co-demandados apelados, Sr. Jesús Rosado Quiñones y la sociedad legal de gananciales que compone con su esposa y se confirma la sentencia apelada en cuanto a la co-demandada Mueblería Rosado, Inc.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

### ESCOLIOS 96 DTA 89

**1.** Demandó también en representación de sus dos hijas, alegando daños, por razón de sufrimientos y angustias mentales, calculados en $100,000 para cada una. Igual suma reclamó su señora madre, la co-demandante, María Molina.

**2.** No se tendrá por maliciosa, ni como tal se considerará la publicación que se hace en un procedimiento legislativo, judicial, u otro procedimiento cualquiera autorizado por la ley. No se presumirá que es maliciosa la publicación que se hace:

*"Primero: En el propio desempeño de un cargo oficial;*

*Segundo: En un informe justo y verdadero de un procedimiento judicial, legislativo u oficial, u otro procedimiento cualquiera, o de algo dicho en el curso de dichos procedimientos;*

*Tercero: A un funcionario oficial, apoyada en causa probable, con la intención de servir al procomún, o de conseguir remedio a un perjuicio hecho a un particular."*

**3.** *Pérez Escobar v. Collado,* 90 D.P.R. 806 (1964); *Elba A. B. v. Univ. de Puerto Rico.* ___ D.P.R. ___, **90 J.T.S. 13**; *Arroyo v. López,* ___ D.P.R___, **90 J.T.S. 101.**

**4.** En su réplica a la oposición a la moción de sentencia sumaria, Mueblería Rosado, acepta que la denuncia se hizo como parte de las funciones del señor Rosado *"como Oficial [sic] de la Compareciente [sic]".*