# 2003 DTA 91

RECEIVED

SEP 0 4 2003

SERIALS DEPT.
HARVARD LAW SCHOOL LIBRARY

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL I DE SAN JUAN, PANEL III

MARÍA HERNANDEZ SANCHEZ
Demandante-Apelante

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO, ET. ALS.
Demandados-Apelados

Núm. KLAN-03-00118

San Juan, Puerto Rico, a 20 de mayo de 2003

Panel integrado por su Presidente, el Juez Rafael Ortiz Carrión,
y los Jueces Antonio J. Negroni Cintrón y Jorge Segarra Olivero

Negroni Cintrón, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

La Sra. María Hernández Sánchez (Sra. Hernández Sánchez) instó el recurso que nos ocupa para que revoquemos la sentencia que el 31 de octubre de 2002 emitiera el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante ese dictamen, el aludido foro desestimó en sus méritos la demanda que instara contra el Estado Libre Asociado (E.L.A.) y otros reclamando compensación por los daños y perjuicios que la alegada difamación de una funcionaria pública del Departamento de Agricultura le había causado. La sentencia apelada se emitió luego de que se celebrara una vista en rebeldía y que el tribunal de instancia diera por admitidos los hechos incluidos en un requerimiento de admisiones que la Sra. Hernández había cursado y no fue contestado.

Contando con el beneficio del alegato del E.L.A., resolvemos.

I

En la sentencia apelada, el tribunal de instancia formuló las siguientes determinaciones de hechos:

*"La señora María Hernández Sánchez (en adelante MARIA), es soltera por divorcio y empleada del Departamento de Agricultura hace veintidós (22) años. Se desempeña como recopiladora de datos en la Oficina de Estadísticas Agrícolas del Departamento de Agricultura.*

*Para el mes de marzo de 1997, fue informada por el abogado del Sr. Angel Ruiz que en unas vistas administrativas celebradas para despedir a este último de su empleo, se le había llamado 'adúltera' haciendo referencia a unas supuestas relaciones entre ella y el señor Angel Ruiz. María sostiene que tal imputación es falsa y difamatoria.*

*María estuvo casada primero con el Sr. Ramón L. Oquendo de quien se divorció el 10 de junio de 1994. Luego de divorciarse de Oquendo, María contrajo matrimonio con el Sr. Angel Ruiz el 22 de julio de 1994 hasta su divorcio en agosto de 1996.*

*Luego, para la fecha de los hechos (marzo de 1997), convivía con su entonces, ex esposo Angel Ruiz. Ninguna otra persona, aparte del abogado del señor Angel Ruiz, le indicó a María sobre la imputación que se le había hecho de 'adultera' en la referida vista administrativa.*

*A raíz de ese incidente, María se reportó al Fondo del Seguro del Estado debido a que se sintió humillada, ofendida y que le habían faltado a su integridad y dignidad.*

*El Fondo del Seguro del Estado, aun cuando le dio tratamiento, le ordenó descanso por un mes y le recetó medicamentos; no le relacionó ocupacionalmente su condición emocional.*

*Desde 1997 al presente, la demandante visita regularmente (1 a 2 veces al mes) al Dr. Reynaldo Kianes (psiquiatra), quien le ha prescrito medicamentos antidepresivos, ansiolíticos a hipnóticos, según ameritan los síntomas que presenta la demandante en las distintas etapas de su condición. María sufre de un trastorno de ajuste con rasgos de ansiedad y depresión que el Dr. Kianes relaciona con el incidente de que a oídos de la demandante llegó el que le hayan tildado de adúltera, puesto que la demandante negó todo historial de trastornos o condiciones mentales anterior a esa fecha y llevaba para 1997, dieciocho (18) años trabajando en*

*la agencia sin problema alguno.*

*Al presente, la demandante lleva a cinco (5) años tratando de lidiar con la situación que le aqueja. No ha solicitado ser trasladada. No ha sido despedida. Tampoco ha recibido ascensos.*

*María está perdiendo la capacidad para lidiar con su situación y dependiendo del estresor externo injuriante, si mejora o empeora, igualmente será su recuperación.*

*Antes del incidente, María compartía en todas las actividades de su oficina y mantenía una excelente relación con sus compañeros. Posterior al mismo, se siente rechazada por sus compañeros. Son pocos los que siquiera le devuelven su saludo. Cuando pasan frente a ella, éstos guardan silencio hasta que ella se aleja. Su ambiente de trabajo se ha tornado tenso luego de la vista administrativa de 1997. María entiende que 'la voz se ha regado' y aunque ninguno de los compañeros verbalmente le ha indicado nada, ella percibe que el rechazo se debe a las imputaciones falsas que sobre ella se dijeron.*

*Los siguientes requerimientos pertinentes a esta acción por parte de la Agro. Ana M. Medina Cruz, quien es empleada del Departamento de Agricultura para la fecha de los hechos se dieron por admitidos.*

*Que Ana M. Medina Cruz fue supervisora de las siguientes personas:*

*a. Angel David Ruiz Guerrero*

*b. María Hernández Sánchez*

*Sobre la Vista Administrativa contra Angel David Ruiz Guerrero efectuada el 21 de marzo de 1997:*

*a. Que fue a dicha vista, a la única que ella compareció como testigo;*

*b. Que ese día no hubo incidentes con cámaras de cintas videomagnetofónicas, ni con ningún equipo de grabación de gran tamaño de Angel David Ruiz Guerrero.*

*En cuanto a Cronología de Eventos relacionados con el empleado Agro. Angel David Ruiz Guerrero, fechada 3 de febrero de 1997; Anejo II, quedó admitido que:*

*la copia que se acompañó es fiel y exacta del original;*

*ella preparó y firmó el documento;*

*que informó allí que el señor Angel David Ruiz Guerrero dejó de ser un buen empleado a raíz de que comenzó a enamorar a la señora María Hernández Sánchez;*

*que antes de eso no había quejas sobre el señor Angel David Ruiz Guerrero;*

*Sobre su cronología número tres (3), sobre las visitas de la esposa del señor Angel David Ruiz Guerrero a la oficina para perturbar la paz, quedó admitido que ella:*

*Que hizo esa declaración;*

*Que no le consta de propio y personal conocimiento estos hechos;*

*Que dicha declaración es falsa, ya que esos hechos a ella no le constan;*

*Que dicha declaración es falsa, ya que esos hechos nunca sucedieron;*

*Que mintió para perjudicar al señor Angel David Ruiz Guerrero y la señora María Hernández Sánchez.*

*Sobre su cronología número cuatro (4), sobre el ambiente de desagrado ante sus compañeros, quedó admitido que ella:*

*Hizo esa declaración;*

*Que a ella no le consta de propio y personal conocimiento estos hechos;*

*Que dicha declaración es falsa, ya que esos hechos no le constan;*

*Que dicha declaración es falsa, ya que esos hechos nunca sucedieron;*

*Que mintió para perjudicar al señor Angel David Ruiz Guerrero y la señora María Hernández Sánchez.*

*Sobre su cronología número 4, sobre que ambos estaban casados, refiriéndose al señor Angel David Ruiz Guerrero y a la señora María Hernández Sánchez, y la supuesta relación que se le imputa quedó, admitido que ella:*

*Hizo esa declaración;*

*Que a ella no le consta de propio y personal conocimiento estos hechos;*

*Que su declaración es falsa, ya que esos hechos no le constan;*

*Que la declaración es falsa;*

*Que mintió para perjudicar al señor Angel David Ruiz Guerrero y a la señora María Hernández Sánchez.*

*Sobre su cronología número 3, en la que declaró que Angel David Ruiz Guerrero comenzó a enamorar a María Hernández Sánchez, quedó admitido que:*

*Estos hechos, de haber ocurrido, transcurrieron posterior al 1992;*

*Que ella sabía que a esa fecha Angel David Ruiz Guerrero estaba divorciado;*

*Que para 1993, la relación entre Angel David Ruiz Guerrero y María Hernández Sánchez era de amistad, no habiendo motivos para pensar lo contrario.*

*Que hizo esa declaración;*

*Que no le consta de propio y personal conocimiento estos hechos;*

*Que dicha declaración es falsa, ya que esos hechos no le constan;*

*Que dicha declaración es falsa, ya que esos hechos nunca sucedieron;*

*Que mintió para perjudicar al señor Angel David Ruiz Guerrero y la señora María Hernández Sánchez.*

*Quedó admitido que a ella le constaba que Angel David Ruiz Guerrero, ya estaba divorciado antes de 1993;*

*Que con anterioridad a estos hechos, ella era amiga de Angel David Ruiz Guerrero;*

*Que la amistad era al punto en que ella le prestó dinero a Angel David Ruiz Guerrero, según evidencian los cheques que se acompañan como Anejo III;*

*A raíz de esa amistad, ella conocía del divorcio de Angel David Ruiz Guerrero.*

*Quedó admitido que ella declaró en su cronología del 3 de febrero de 1997 que Angel David Ruiz Guerrero y María Hernández Sánchez tenían una relación adúltera;*

*Que no le consta a ella de propio y personal conocimiento si entre ellos hubo una relación adúltera;*

*Que mintió en su cronología del 3 de febrero de 1997, sobre la relación adúltera de Angel David Ruiz Guerrero y María Hernández Sánchez para perjudicarlos;*

*Que durante su testimonio en la vista del 21 de marzo de 1997, ella declaró que Angel David Ruiz Guerrero y María Hernández Sánchez tenían una relación adúltera;*

*Que durante su testimonio en vista del 21 de marzo de 1997, ella hizo declaraciones que dan a entender que entre Angel David Ruiz Guerrero y María Hernández Sánchez había una relación adúltera;*

*Que no le consta de propio y personal conocimiento, si entre Angel David Ruiz Guerrero y María Hernández Sánchez hubo una relación adúltera en algún momento.*

*Que ella no sabe si Angel David Ruiz Guerrero y María Hernández Sánchez tuvieron relaciones sexuales antes de sus respectivos divorcios y aún así hizo sus declaraciones.*

*Que ninguna de las actuaciones de Angel David Ruiz Guerrero y María Hernández Sánchez antes de sus divorcios, daban a entender que entre ellos existía algo más que una amistad.*

*Que ella acostumbra mentir tanto en documentos públicos, como bajo juramento;*

*Que ella calumnió a María Hernández Sánchez al imputarle una relación adúltera con Angel David Ruiz Guerrero, a pesar de saber que esto era falso;*

*Que ella calumnió a María Hernández Sánchez al imputarle una relación adúltera con Angel David Ruiz Guerrero, a pesar de que no le constaba de propio y personal conocimiento;*

*Que ella calumnió a María Hernández Sánchez para perjudicarla."*

A base de estos hechos, el tribunal apelado concluyó que la apelante no justificó la concesión del remedio compensatorio que solicitaba, ya que no había probado todos los elementos de la causa de acción que instó.

Inconforme, en su recurso, la apelante le imputa al tribunal de instancia haber errado, *"...al no dar por probado el elemento de publicación en virtud de la anotación de rebeldía y el requerimiento de admisiones"* y

*"...al considerar las declaraciones como condicionalmente privilegiadas."*

## II

La acción civil de daños y perjuicios por difamación es una acción genérica de responsabilidad extracontractual que incluye el libelo y la calumnia, y está predicada en la ofensa al honor y la reputación de la persona agraviada. *Ojeda Ojeda v. El Vocero, Inc.,* 137 D.P.R. 315 (1994). En Puerto Rico, la acción por difamación tiene dos fuentes, el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, y la Ley de Libelo y Calumnia, 32 L.P.R.A. secs. 3141-49. Su génesis es la protección constitucional contra ataques a la honra y reputación, contenida en el Art. II, sección 8, de la Constitución del Estado Libre Asociado de Puerto Rico. *Jiménez Alvarez v. Silén Maldonado,* 131 D.P.R. 91 (1992).

En las acciones por difamación, en caso de que el reclamante sea una figura privada, se debe probar que la expresión difamatoria se hizo negligentemente, conforme lo dispuesto para las acciones en daños y perjuicios. Carlos J. Irizarry Yunqué, *Responsabilidad Civil Extracontractual,* Universidad Interamericana de P.R., 1995, pág. 101 (citando a *González Martínez v. López,* 118 D.P.R. 190, 192-193, 1987). El reclamante deberá probar: (1) que la expresión es falsa, (2) difamatoria, y (3) que por razón de su publicación sufrió daños reales. La publicación se configura cuando la expresión es comunicada a una tercera persona. *Id.*

Para armonizar el conflicto existente entre el interés en proteger la honra de las personas contra ataques difamatorios y otros intereses sociales legítimos, se ha reconocido un privilegio restringido o inmunidad bajo el cual una persona puede informar a la comunidad sobre un asunto de interés público. Herminio Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico,* **Publicaciones J.T.S.,** 1986, pág. 991. Ciertamente, ese privilegio o inmunidad se pierde si la información se suministra a quien no existe razón para creer que puede proteger el interés personal del declarante o la comunidad, si el declarante proporciona publicidad excesiva al asunto en cuestión, y, por último, si el declarante actúa por motivos impropios. *Cortés Portalatín v. Hau Colón,* 103 D.P.R. 734 (1975). Si la declaración está cubierta por dicho privilegio, el reclamante tiene el peso de la prueba de demostrar la pérdida del mismo. *Romany v. El Mundo, Inc.,* 89 D.P.R. 604, 618 (1963).

En la esfera y ámbito obrero-patronal, cualquier comunicación externa de una expresión libelosa del patrono a una tercera persona automáticamente constituye una publicación. En las comunicaciones intracorporativas habidas entre los miembros de una corporación, se configura el elemento de publicación. Sin lugar a dudas, *"las expresiones falsas y difamatorias que haga un oficial corporativo respecto a un empleado en particular, de advenir al conocimiento de los restantes empleados de la empresa, afecta la opinión y el respeto que tienen éstos respecto al empleado en controversia." Porto v. Bentley P.R., Inc.,* 132 D.P.R. 331 (1992), págs. 348-350.

Sin embargo, en el ámbito obrero-patronal se reconoce el **privilegio** restringido de las comunicaciones del patrono a gerentes o supervisores de un empleado despedido, informándoles las razones del despido; comunicaciones hechas a patronos prospectivos informándoles la razón del despido del empleado; manifestaciones hechas en las hojas de evaluación de rendimiento de un empleado; dando información de referencia acerca de un empleado a otros patronos potenciales; comunicaciones entre supervisores y empleados de personal. *Porto v. Bentley P.R., Inc., supra.*

Ciertamente, de advenir al conocimiento de los restantes empleados de la empresa las expresiones falsas y difamatorias que haga un oficial del patrono respecto a un empleado en particular, afecta la opinión y el respeto que tienen éstos respecto al empleado en controversia, *Porto v. Bentley, supra,* pero si se brinda durante **una vista** no se puede presumir o especular que fue un oficial del patrono el que lo divulgó fuera del recinto donde se celebró la vista, de acuerdo con las Secs. 4 y 5 de nuestra Ley de Libelo y Calumnia, 32 L.P.R.A. secs. 3144-3145. *Porto v. Bentley P.R., Inc., supra; Bosh v. Editorial El Imparcial,* 87 D.P.R. 285, 304-305 (1963); *Díaz v. P.R. Ry. Lt. & Co.,* 63 D.P.R. 808, 811 (1944); *Quiñones v. J.T. Silva Banking and Commercial Co.,* 16 D.P.R. 696 (1910).

En el ámbito obrero-patronal, se ha reconocido esta necesidad para promover el libre flujo de comunicación entre patrono y empleado y a diferentes modos de comunicación en el trabajo. *Porto v. Bentley P.R., Inc., supra.* Este **privilegio** condicional incluye la publicación de toda comunicación hecha de buena fe con relación a un asunto en que el autor tiene interés o con respecto al cual tiene un deber que cumplir hacia otros. Es condicional porque la persona que lo utiliza deberá hacerlo de acuerdo con la ley y para un fin apropiado. *Caraballo v. P.R. Ilustrado, Inc.,* 70 D.P.R. 283, 291 (1949).

Esta inmunidad condicional desaparece si la parte demandada abusa del **privilegio** y la comunicación se entabla con quien no existe razón para creer que puede proteger el interés del autor o de la comunidad, según sea el caso; o si el autor le imparte **publicidad** excesiva al asunto; o si el autor se mueve por motivos impropios. El que otras personas escuchen o lean incidentalmente una comunicación hecha de modo razonable, no anula el **privilegio**. *Cortés Portalatín v. Hau Colón, supra.*

A la luz de esta normativa, examinemos los méritos del recurso instado.

### III

En su demanda, la apelante reclamó compensación, esencialmente, **porque la Sra. Cruz Medina,** como supervisora del Departamento de Agricultura del ELA y del Sr. Ruiz y de ella, **declaró en una vista administrativa en donde estaban presentes otros empleados del Departamento que se celebraba para determinar si se despedía o no al Sr. Ruiz que la apelante llevaba unas relaciones adúlteras con Angel D. Ruiz Guerrero y que ésta era una adúltera,** cuando era interrogada por una abogada. Aunque los apelados contestaron la demanda, al ELA se le anotó la rebeldía como sanción porque no anunció su nueva representación legal dentro del término que el tribunal de instancia le había ordenado.

No obstante y contrario a la regla general, la Regla 45.5 de Procedimiento Civil requería que en cuanto al ELA, sus instrumentalidades y funcionarios demandados en su carácter oficial, la apelante probara, a satisfacción del tribunal, su derecho al remedio que solicita. 32 L.P.R.A. Ap. III; J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, **Publicaciones J.T.S.,** 2000, Vol. II, págs. 759-761. En otras palabras, aun cuando se le había anotado la rebeldía al ELA y ello impidió que presentara prueba, la apelante tenía que probar preponderantemente todos los elementos de su causa de acción por difamación. No podía descansar en los hechos expuestos en la demanda que alegadamente constituían la difamación. Tenía que probar que la Sra. Cruz Medina declaró en la vista administrativa que se celebrara para destituir al Sr. Ruiz que la apelante llevaba unas relaciones adúlteras con él y que ésta era una adúltera, como aseveró en la demanda. Así, pues, el tribunal de instancia no erró al no considerar como prueba en cuanto al E.L.A. los hechos expuestos en la demanda.

Tampoco erró al determinar que los hechos a que se refiere el requerimiento de admisiones que se dio por admitido, no probaron la causa de acción.

Los autos, ciertamente, demuestran que la apelante se apoyó **en el efecto probatorio de los hechos** a que se refiere el requerimiento de admisiones que la apelante le cursó directamente a la Sra. Cruz Medina y que se dieron por admitidos por no haber sido contestado. Sin embargo, los hechos admitidos no avalan la versión que surge de la demanda.

Como vimos antes, la primera versión fáctica que surge del requerimiento de admisiones es una relacionada con un memorando que la Sra. Cruz Medina le cursó al Secretario de Agricultura en torno al comportamiento en el lugar del trabajo del Sr. Ruiz. Según los hechos del requerimiento de admisiones, la versión es la siguiente:

*"Compareció a la vista administrativa contra el Sr. Ruiz efectuada el 21 de marzo de 1997 y fue la única testigo. Preparó y firmó la Cronología de Eventos relacionados con el Sr. Ruiz e informó en ella que el Sr. Ruiz dejó de ser un buen empleado a raíz de que **comenzó a enamorar a la Sra. Hernández Sánchez.***

*Declaró sobre las visitas de la esposa del Sr. Ruiz a la oficina para perturbar la paz y no le constan de propio y personal conocimiento estos hechos. **Dicha declaración es falsa, ya que esos hechos a ella no le constan** y ya que esos hechos nunca sucedieron. Que mintió para perjudicar al Sr. Ruiz y la Sr. Hernández Sánchez.*

*Que declaró sobre el ambiente de desagrado ante sus compañeros. Que a ella no le consta de propio y personal conocimiento estos hechos. Que dicha declaración es falsa, ya que esos hechos no le constan y ya que esos hechos nunca sucedieron. Que mintió para perjudicar al Sr. Ruiz y la Sra. Hernández Sánchez.*

*Que declaró que estos estaban casados, que no le constan de propio y personal conocimiento estos hechos. Que su declaración es falsa, ya que esos hechos no le constan y que mintió para perjudicar al Sr. Ruiz y a la Sra. Hernández Sánchez.*

*Declaró sobre que el Sr. Ruiz comenzó a enamorar a María Hernández Sánchez y que de haber ocurrido estos hechos, transcurrieron posterior al 1992. Ella sabía que a esa fecha el Sr. Ruiz estaba divorciado. Que para 1993, la relación entre el Sr. Ruiz y la Sra. Hernández Sánchez era de amistad, no habiendo motivos para pensar lo contrario. Que no le consta de propio y personal conocimiento estos hechos. Que dicha declaración es falsa, ya que esos hechos no le constan. Que dicha declaración es falsa, ya que esos hechos nunca sucedieron. Que mintió para perjudicar al Sr. Ruiz y a la Sra. Hernández Sánchez. Que a ella le constaba que el Sr. Ruiz ya estaba divorciado antes de 1993.*

*Que con anterioridad a estos hechos, ella era amiga del Sr. Ruiz. Que la amistad era al punto en que ella le prestó dinero al Sr. Ruiz, según evidencian los cheques que se acompañan como Anejo III. A raíz de esa amistad, ella conocía del divorcio del Sr. Ruiz. Que ella declaró en su cronología del 3 de febrero de 1997 que el Sr. Ruiz y Sra. Hernández Sánchez tenían una relación adúltera. (Lo que no es cierto), pues el memorando no dice eso. Que no le consta a ella de propio y personal conocimiento entre ellos hubo una relación adúltera.*

*Que mintió en su cronología del 3 de febrero de 1997, sobre la relación adúltera del Sr. Ruiz y la Sra. Hernández Sánchez para perjudicarlos."*

En cuanto a los hechos expuestos en la demanda que constituyen la causa de acción por difamación, la versión de los hechos a que se refiere el requerimiento de admisiones es la siguiente:

*"Que durante su testimonio en la vista del 21 de marzo de 1997, ella declaró que el Sr. Ruiz y la Sra. Hernández Sánchez tenían una relación adúltera. Que durante su testimonio en vista del 21 de marzo de 1997, ella hizo declaraciones **que dan a entender** que entre el Sr. Ruiz y la Sra. Hernández Sánchez había una relación adúltera. **Que no le consta de propio y personal conocimiento, si entre estos hubo una relación adúltera en algún momento. Que ella no sabe si estos tuvieron relaciones sexuales antes de sus respectivos divorcios y aún así hizo sus declaraciones.** Que ninguna de las actuaciones de éstos antes de sus divorcios daban a entender que entre ellos existía algo más que una amistad.*

*Que ella acostumbra mentir tanto en documentos públicos, como bajo juramento. Que ella calumnió al imputarle a ambos una relación adúltera, a pesar de saber que esto era falso. Que ella calumnió a la Sra. Hernández Sánchez al imputarle una relación adúltera con el Sr. Ruiz, a pesar de saber que eso era falso. Que ella calumnió a la Sra. Hernández al imputarle una relación adúltera con el Sr. Ruiz, a pesar de que no le constaba de propio y personal conocimiento. Que ella calumnió a la Sra. Hernández Sánchez para perjudicarla."*

Como puede apreciarse, en el pleito que nos ocupa y como fundamento para la desestimación de los méritos de la demanda, el tribunal de instancia concluyó que la apelada no demostró una actuación que justifique la

concesión de un remedio. En las conclusiones de derecho de la sentencia apelada, expuso, en síntesis, que las manifestaciones falsas a las que se refiere la demanda constituyeron comunicaciones condicionalmente privilegiadas y que debido a ello no se probó el elemento de publicación que requiere la causa de acción instada por la apelante.

Sobre el efecto evidenciario de los hechos que se tuvieron por admitidos al no contestar la Sra. Cruz Medina el requerimiento de admisiones que le cursó la apelante, el tribunal indicó que aunque se acepte que la Sra. Cruz Medina mintió al declarar que existía una relación adúltera entre el Sr. Ruiz y la Sra. Hernández Sánchez con el único fin de perjudicarlos, sin constarle de propio y personal conocimiento y sin saber si eran ciertas o no, **las declaraciones fueron hechas en el curso de una vista administrativa para destituir al Sr. Ruiz que luego fue esposo de la apelante**; que las terceras personas que escucharon esas declaraciones eran empleados de la agencia administrativa que estaban en la vista y que fue el abogado del Sr. Ruiz quién le informó privadamente a la apelante que la declaración se había hecho y su contenido.

Debido a ello, entendió que se trataba de comunicaciones condicionalmente privilegiadas por haberse brindado como parte de un proceso administrativo de destitución de otro empleado, y que no constituye publicación, aunque no albergaba duda de que la apelante sufrió y ha sufrido daños emocionales al tener conocimiento de tales expresiones. Concluyó, además, que el que se haya creado un ambiente de trabajo opresivo, o humillante en el lugar de trabajo de la apelante, no se debe a hechos específicos, pues ninguno de sus compañeros de trabajo la ha humillado, oprimido u acosado.

Estimó que la descripción que ofreció del ambiente de trabajo constituye una opinión subjetiva y especulativa de la apelante; que se trata de su apreciación de que su ambiente de trabajo ha cambiado luego de la vista administrativa por haberse "*regado la voz*" sobre las expresiones hechas durante la vista y que no existe evidencia de que se divulgó fuera de la Sala de Vistas la información difamatoria.

Opinamos que el tribunal de instancia no se equivocó al así dictaminar. La apelante no demostró la pérdida del privilegio o inmunidad, o que la Sra. Medina Cruz instigó una imputación maliciosa, hecha de mala fe y sin fundamento razonable en su contra. Aunque el tribunal de instancia tenía que considerar como evidencia los hechos que se indicaron en el requerimiento de evidencia, la prueba que la propia apelante presentó demostró que, en todo caso, la Sra. Medina Cruz apreció equivocadamente la naturaleza de la relación de la apelante con el Sr. Ruiz. El mero hecho de informar en el juicio un hecho falso, no es suficiente para imponerle responsabilidad. *Raldiris v. Levitt & Sons of P.R., Inc.,* 103 D.P.R. 778, 782 (1975). Esas declaraciones fueron comunicadas a la autoridad competente para que ésta tomara la acción correspondiente. Su deber era presentar esa información a las autoridades competentes, tal y como lo hizo, para el esclarecimiento de los hechos a los fines de exigir la responsabilidad correspondiente. *Raldiris, supra*, pág. 782.

No hay prueba ni se alega que existe prueba en el expediente de que la Sra. Medina Cruz, como supervisora de la apelante y del Sr. Ruiz y quien proporcionara la información, le brindara publicidad excesiva al asunto en cuestión o que actuara por motivos impropios más allá de aquellos surgidos y que motivaron la consideración del despido del Sr. Ruiz. Concluimos que la información provista es una de las comunicaciones cubiertas por la inmunidad o el privilegio restringido y, por tanto, no procedía la acción por difamación.

En la causa ante nos, el balance racional y justiciero de la evidencia combinada que surge del testimonio de la apelante durante el juicio y del hecho de que se dieran por admitidos los hechos a que se refería el requerimiento que se le cursara al ELA, es que aunque el testimonio que la Sra. ofreció durante el juicio fuera falso en cuanto a la relación adúltera que le imputó a la apelante, éstas no fueron declaraciones externas o públicas por el hecho de que se brindaran en una vista. Ese hecho de por sí no las torna en expresiones públicas.

Resulta evidente que la declaración difamatoria en torno a la conducta de la apelante y el Sr. Ruiz que explica

la razón por la que se despedía a éste fue brindada en una vista administrativa en la que debía declararse todo lo pertinente. La falsedad no fue adjudicado en ese proceso. Al litigar su derecho a despedir a un empleado el patrono tiene derecho a que se ventile en el proceso las razones que consideró. El despido de un empleado es un evento legítimo del patrono para el buen funcionamiento de una empresa. Es lícito que reciba la información que brinden los que supervisan a sus empleados y que éstos puedan divulgarla al patrono y a cualquier organismo que deba conocerlo. Es válido que se la comuniquen libremente a aquellas personas con derecho a conocer o a estar informadas de las actuaciones de los empleados. Dentro de esa dinámica, las causas para despedir esa información legítima que podía ser divulgada a las personas con interés en la comunicación.

**IV**

Por los fundamentos expuestos, se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General